Roger M. DOLESE and Susan B. Dolese, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 84–2490.

United States Court of Appeals, Tenth Circuit.

Feb. 10, 1987.

**544**

Laurence J. Whalen of Crowe & Dunlevy, Oklahoma City, Okl. (Edward H. Moler of Barefoot, Moler & Clare, Oklahoma City, Okl., with him on the briefs) for petitioners-appellants.

Murray S. Horwitz (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, and Jonathan S. Cohen, with him on the briefs) of the Dept. of Justice, Washington, D.C., for respondent-appellee.

Before McWILLIAMS, LOGAN, and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Roger M. Dolese and Susan B. Dolese appeal from a decision of the United States Tax Court, *Dolese v. Commissioner of Internal Revenue*, 82 T.C. 830 (1984), affirming the Commissioner's determination of deficiencies in appellants' 1976 and 1977 income taxes.[1] Pursuant to 26 U.S.C. § 482,[2] the Commissioner of Internal Revenue reallocated interests in two tracts of land distributed by a partnership to its only partners, Roger Dolese and his wholly-owned corporation, to reflect each partner's interest in the partnership. The original distribution, which was disproportionate to the partners' interests, was followed by a partial gift and partial sale of the land to the city of Oklahoma City. The reallocation resulted in a decrease in appellants' claimed charitable contribution deduction and an increase in their capital gains. Consequently, the Commissioner determined there were deficiencies in appellants' income taxes in the amounts of $57,455.12 and $151,077 for the years 1976 and 1977, respectively. Because we conclude the Commissioner's reallocation was not shown to be unreasonable, arbitrary, or capricious, we affirm the tax court.

Roger Dolese owned 100% of the stock in The Dolese Company (the corporation). Mr. Dolese and the corporation were partners in Dolese Bros. Co. (the partnership)

---

1. Susan Dolese is involved in this appeal only because she and her husband, Roger, filed joint returns for the tax years in question.

2. The section provides:
 In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

in which Mr. Dolese owned a 49% interest and the corporation owned a 51% interest. On December 1, 1972, the corporation contributed 160.031 acres of undeveloped land to the partnership. Beginning in 1974, the corporation took steps to devise a development plan for the land.

Unbeknownst to Mr. Dolese and the corporation, Oklahoma City and the Kerr Foundation, a philanthropic organization, began exploring the possibility of obtaining some of the land for a public park. In the summer of 1975, representatives of the corporation and Mr. Dolese discussed the possibility of a gift to the city of the east half of the property along with the simultaneous sale of the west half for its fair market value of $1,387,560. Mr. Dolese and the corporation represented they would make the contribution only if the donated amount could be fully utilized by them as charitable deductions. Based on the corporation's anticipated income and the limitations on charitable deductions then imposed by the Internal Revenue Code, Mr. Dolese's attorneys recommended that prior to contribution, the donated property be distributed from the partnership to Mr. Dolese and the corporation in a 75%–25% ratio, respectively.[3]

On March 29, 1976, the partnership conveyed the property to the partners in two tracts. The west half, Tract I, was distributed 76% to Mr. Dolese and 24% to the corporation. Tract II was distributed 24% to Mr. Dolese and 76% to the corporation. On March 30, 1976, Mr. Dolese and the corporation donated Tract I to the city. Due to funding problems not important here, the west half of the property was donated to the city rather than the east half as originally anticipated. Mr. Dolese and the corporation then gave the city an option to purchase Tract II in three parcels. In July 1976, they sold 51 acres of Tract II to the city for $700,000, which resulted in a long-term capital gain of $685,415.55. The city purchased the two remaining parcels in August 1977 for $676,240, resulting in a long-term capital gain of $667,508.

At the time Tract I was donated, it had a fair market value of $1,387,560. On their 1976 income tax return, the Doleses claimed a charitable contribution in the amount of $1,054,546, reflecting Mr. Dolese's 76% interest in the contributed parcel. They reported a long-term capital gain of $166,403.19 from the sale of Mr. Dolese's 24% interest in 51 acres of Tract II. On their 1977 tax return, the Doleses claimed a $666,544 charitable contribution carry-over from 1976 and reported a long-term capital gain of $160,755 for the sale of Mr. Dolese's 24% interest in the remainder of Tract II.

In September 1981, the Commissioner sent the Doleses a notice of deficiency for the 1976 and 1977 tax years in which he reallocated the distribution of Tracts I and II under § 482 of the Internal Revenue Code. Under the Commissioner's apportionment, Mr. Dolese received a 49% interest and the corporation a 51% interest in each tract. For the Doleses 1976 income taxes, the reallocation effected a decrease in their charitable deduction from $1,054,-546 to $679,904.40 and an increase in their capital gain from $166,403.19 to $335,-853.62. For 1977, the Doleses' charitable contribution carry-over was reduced from $666,544.02 to $256,800, and their capital gain was increased from $160,755 to $327,-079.

Upon the Doleses' petition for redetermination, the tax court upheld the notice of deficiency as issued. The court concluded the Commissioner's application of § 482 was proper, specifically finding that the

---

**3.** The corporation could only claim a charitable contribution equal to 5% of its net income before contributions, certain special deductions, and loss carry-backs. Mr. Dolese could deduct up to 30% of his contribution base. Based on the corporation's anticipated earnings, it was unlikely that its net earnings for 1976 and the succeeding five years would be sufficient to utilize the full amount of the charitable deduction if the donated property was distributed 51% to the corporation and 49% to Mr. Dolese to reflect the partners' interests in the partnership.

dual business requirement of the section was met and that the distribution of property from the partnership and subsequent contribution and sale did not meet the arm's length test set forth in Internal Revenue Commission regulations.

### I.

 We first note that a taxpayer shoulders a heavy burden in seeking to overturn a reallocation of income and deductions under § 482. In the first instance, a deficiency determination by the Commissioner carries a presumption of correctness, and the taxpayer has the burden of showing it to be otherwise. *Foster v. Commissioner*, 756 F.2d 1430, 1439 (9th Cir.1985), *cert. denied*, ——— U.S. ———, 106 S.Ct. 793, 88 L.Ed.2d 770 (1986); *Davis v. Commissioner*, 585 F.2d 807, 812 (6th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979). Secondly, the Commissioner has wide discretion under § 482, and his decision to reallocate income and deductions will not be overturned unless the determination is shown to be arbitrary, capricious, or unreasonable. *Powers v. Commissioner*, 724 F.2d 64, 66 (7th Cir. 1983); *Erickson v. Commissioner*, 598 F.2d 525, 528 (9th Cir.1979). Finally, a court of appeals will not set aside findings of the tax court unless they are shown to be clearly erroneous. *Peck v. Commissioner*, 752 F.2d 469, 472 (9th Cir.1985); *Stewart v. Commissioner*, 714 F.2d 977, 990 n. 17 (9th Cir.1983).

In the instant case, the tax court found that all the elements necessary to invoke the Commissioner's power under § 482 were present, and it concluded the Commissioner's determination was not arbitrary, capricious, or unreasonable. Mr. Dolese grounds his appeal on a challenge to the existence of those elements, but he has not shown us that the tax court's findings are clearly erroneous or that its conclusions are contrary to law. Therefore, the court's decision sustaining the Commissioner's deficiency determination must be affirmed.

### II.

Mr. Dolese first argues the distribution was not disproportionate because his share of the aggregate value of the two tracts of land ($1,394,611) was 49.73% of their total value ($2,804,500), which closely approximates his 49% partnership interest. Mr. Dolese's contention ignores the fact that the distribution involved two discrete parcels of land, Tract I and Tract II, each of which underwent a distinct, subsequent transaction. The tax benefits claimed by Mr. Dolese flowed directly from the percentage of his ownership in each tract coupled with the nature of the subsequent transaction. Therefore, the disproportionate character of the distribution of the separate tracts of land, rather than the partners' interests in the aggregate value of the two parcels, is of critical importance to this case.

Even if the distribution is disproportionate, Mr. Dolese contends § 482 is inapplicable because the tax consequences of a distribution of property from a partnership to its partners is governed by 26 U.S.C. § 731 and Treas.Reg. § 1.731–1 (1965). He points out that under § 731 the distribution of partnership property is designed to be a non-taxable event; the gain or loss resulting from the distribution is reflected in the recipient partner's basis in the property and is recognized at the time the partner disposes of the property. Mr. Dolese argues that application of § 482 to reallocate the distribution contravenes congressional intent underlying § 731.

 Under § 482, the Commissioner has broad discretion to correct distortions of income which occur through the strict application of other provisions of the Internal Revenue Code. *National Securities Corp. v. Commissioner*, 137 F.2d 600, 602 (3d Cir.), *cert. denied*, 320 U.S. 794, 64 S.Ct. 262, 88 L.Ed. 479 (1943). The Commissioner may invoke § 482 to reallocate income derived from the disposition of property previously acquired in a nonrecognition transaction. *Foster*, 756 F.2d at 1433; *Stewart*, 714 F.2d at 989. While the cases have specifically held that conflict

with 26 U.S.C. § 351[4] does not bar application of § 482, their rationale is equally applicable to conflicts between §§ 731 and 482. Furthermore, under the latter section, the Commissioner has broad discretion to reallocate income, deductions, credits, or allowances whenever "he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of [controlled entities]." 26 U.S.C. § 482. Therefore, the Commissioner does not abuse his discretion in applying § 482 to transactions addressed by other sections of the Internal Revenue Code so long as his power under the section is properly invoked.

### III.

Turning to the elements necessary to invoke § 482, Mr. Dolese argues that the Commissioner's allocation in this case does not involve two "organizations, trades, or businesses" within the meaning of § 482. Seizing upon the tax court's characterization of the Commissioner's determination as an allocation of income and deductions *from Mr. Dolese to the partnership*, Mr. Dolese argues that § 482 cannot apply to a partnership and one of its partners because they are not separate tax-paying entities. He points out that no prior cases have applied § 482 to reallocate income from an individual partner to a partnership; all of the cases involving an individual taxpayer concern reallocations between the individual and a controlled corporation, which are separate tax-paying entities. Mr. Dolese concludes that the tax court's decision reads the dual business requirement out of § 482. We disagree.

■ The partnership and Mr. Dolese were not the only entities involved in the distribution of partnership property and the subsequent contribution and sale. The corporation's role was crucial to the production of the tax consequences at issue here, and Mr. Dolese engaged in a trade or

business distinct from the business of the corporation. As the tax court noted, Mr. Dolese listed his occupation as "executive" on his tax returns, and he received a salary from the corporation for his services. This court has upheld the application of § 482 to an individual and his wholly-owned service corporation where the individual was a salaried employee of the corporation. *Keller v. Commissioner*, 77 T.C. 1014, 1023–24 (1981), *aff'd*, 723 F.2d 58 (10th Cir.1983). Furthermore, Mr. Dolese's business as a corporate executive was distinct from his partnership activities because he was not a salaried employee of the partnership but an investor in the partnership. Therefore, the tax court correctly held that the Commissioner's reallocation involved two separate trades or businesses within the meaning of § 482.

Mr. Dolese contends that even if his trade or business is separate from the partnership's business for § 482 purposes, the fact that he was engaged in two separate trades or businesses is not, by itself, enough to satisfy the dual business requirement. To justify exercise of the Commissioner's power under § 482, Mr. Dolese argues the two or more separate trades or businesses must deal with one another to produce a distortion of income. In the instant case, he characterizes the pertinent transaction as the distribution of partnership assets. Because he contends his trade or business as corporate executive was not involved in the distribution of the subject property from the partnership to him as a partner, Mr. Dolese concludes the dual business requirement is not met.

■ Mr. Dolese's insistence upon narrowing the scope of the transaction to the distribution of partnership property obfuscates the issue presented. The distortion of income the Commissioner sought to correct arose from the disproportionate distribution of each tract of land followed by the contribution of one tract and the sale of the other. The corporate partner's acqui-

---

**4.** 26 U.S.C. § 351 provides for nonrecognition of gain or loss in transfers of property to a corporation controlled by the transferor.

escence in the distribution and the subsequent contribution and sale was made possible solely through Mr. Dolese's exclusive control of the corporation. Therefore, Mr. Dolese's trade as a corporate executive and his role in the partnership were both involved in the transaction that produced distorted tax consequences.

The fact that no prior case has addressed the application of § 482 to the distribution of income and deductions from a partnership to an individual and the individual's wholly-owned corporation does not persuade us that application of the section is precluded. Cases addressing the dual business requirement have held that the terms "trade," "business," and "organization" are to be broadly construed. *Wilson v. United States*, 530 F.2d 772, 777 (8th Cir. 1976). *See also Keller*, 77 T.C. at 1022. Furthermore, § 482 gives the Commissioner broad discretion to place a controlled taxpayer in the same position as an uncontrolled taxpayer. *Foster*, 756 F.2d at 1432; *Peck*, 752 F.2d at 472. Expansive construction of the terms comports with the Commissioner's broad discretionary power. We therefore conclude the tax court's application of the dual business requirement was not contrary to law.

### IV.

Mr. Dolese next contends § 482 cannot apply because the distribution of property from the partnership and the subsequent contribution and sale meet the arm's length test set forth in Treas.Reg. § 1.482–1(b)(1) (as amended in 1968):

> The purpose of section 482 is to place a controlled taxpayer on a parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true taxable income from the property and business of a controlled taxpayer. ... The standard to be applied in every case is that of an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer.

He first points out that the distribution of partnership property could have been made to unrelated partners, and therefore, the tax benefits he claimed would have been available to unrelated partners. Mr. Dolese reasons that because the amount of land which the corporate partner could have contributed was not in any way diminished by the amount of land he chose to donate, the tax consequences of the partnership distribution would have been the same if the distribution had been made to unrelated partners. Mr. Dolese's argument once again ignores the two-part nature of the transactions that produced the tax consequences at issue.

■ While unrelated partners may have acquiesced in a similarly disproportionate distribution in light of the correlation between aggregate value and partnership interests, it does not follow that an uncontrolled corporate partner would have made a subsequent charitable contribution to the city. The tax court found that a hypothetical uncontrolled and unrelated corporation would have derived a greater economic or after-tax benefit by the outright sale of its 51% interest in the property than it enjoyed from its participation in the contribution and sale. This finding, undisputed by Mr. Dolese, undermines his argument that the transaction would have occurred between uncontrolled taxpayers.

In concluding the arm's length test was not met, the tax court relied on *Northwestern National Bank of Minneapolis v. United States*, 556 F.2d 889 (8th Cir.1977). In that case, a wholly-owned subsidiary of a bank held 10% of the stock of a corporation which owned a valuable building complex. On the eve of the highly profitable sale of the building complex, the subsidiary distributed the stock to the bank as a dividend. The bank then contributed the stock to a charitable foundation which, in turn, sold the stock. The charitable contribution by the bank resulted in a far greater tax saving than contribution by the subsidiary would have produced. In affirming the Commissioner's deficiency determination against the bank and his corresponding reallocation of the charitable deduction back to the subsidiary, the Eighth Circuit held that the transaction was made possible

solely on the basis of the bank's relationship and control of the subsidiary.

Mr. Dolese attempts to distinguish *Northwestern National Bank* on the ground the reallocation there resulted in a tax gain to the parent as well as a corresponding tax loss to the subsidiary. In the instant case, the tax loss to Mr. Dolese in the form of decreased charitable deductions and increased capital gains was not accompanied by a corresponding tax gain for the corporate partner. While the distinction exists, it is without a difference. The Eighth Circuit's decision sustaining the Commissioner's deficiency determination rested on the fact that the transaction producing the tax advantage was not available in an arm's length transaction but was made possible solely by the benefited taxpayer's relationship with and control of another entity. Similarly, in this case, the tax consequences of the transaction, which consisted of the partnership property distribution and subsequent sale and contribution, arose because Mr. Dolese possessed complete control over the partnership's only other partner, his wholly-owned corporation. The Commissioner's authority under § 482 extends to any case in which taxable income is other than it would have been had the taxpayer dealt at arm's length with another uncontrolled taxpayer. *See First Security Bank,* 436 F.2d 1192, 1195 (10th Cir.1971), *aff'd,* 405 U.S. 394, 92 S.Ct. 1085, 31 L.Ed.2d 318 (1972). Therefore, the tax court's conclusion that the Commissioner's reallocation was proper was not contrary to law.

AFFIRMED.