**HORTON HOMES, INC., etc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. Nos. 88–279–3–MAC (WDO), 88–280–1–MAC (WDO) and 88–281–2–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

Jan. 5, 1990.

David D. Aughtry, Richard N. Hubert, Atlanta, Ga., John James, Macon, Ga., for plaintiffs.

Curtis Bowman, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

OWENS, Chief Judge:

## FACTUAL BACKGROUND

The Internal Revenue Service (IRS) conducted an extensive examination of plaintiffs' tax returns and determined tax deficiencies for each of the plaintiffs. The IRS made determinations with respect to Horton Homes, Inc. (Horton Homes) for the taxable years ending August 31, 1978, through August 31, 1982, inclusive. The IRS also made determinations with respect to plaintiffs N.D. Horton, Sr. and Maude Horton on their joint returns for the taxable years 1978, 1979, and 1980 and plaintiffs N.D. Horton, Jr. and Jacquelyn P. Horton for the taxable years 1978, 1979, and 1980.

The IRS also determined tax deficiencies with respect to three other entities related to the plaintiffs. The IRS conducted an audit for the taxable years ending April 31, 1979, through April 31, 1983, inclusive, on

Horton International, Inc., which had the same shareholders as Horton Homes and the same president, N.D. Horton, Jr. In addition, the IRS conducted audits on R.J. and J. Enterprises, Inc. for the years ending July 31, 1979, and July 31, 1980, and Rufus W. and Maude Hicks for the years 1978, 1979, and 1980 taxable years.

All six entities were represented by the same attorneys. Each submitted written protests of the examination reports which had resulted in proposed tax deficiencies. The six cases were by agreement handled together by the same IRS appeals officer. On May 14, 1985, and November 22, 1985, plaintiffs' representatives met formally with the IRS appeals officer. The parties also met informally on several other occasions, and corresponded by telephone and in writing regarding settlement of the cases. Subsequently, the appeals officer and the representative of the plaintiffs and the related taxpayers reached a package agreement.[1]

On December 22, 1986, plaintiffs, through their counsel, made prepayments against tax and estimated past interest to prevent the running of future interest. The IRS subsequently adjusted plaintiffs' estimate of interest to conform with its own calculation. On or about December 23, 1986, plaintiffs were advised by the representative of the IRS that the government could no longer agree to incorporate into the settlement one of the negotiated provisions favorable to the taxpayers. In response to this change, plaintiffs proposed, by letter dated December 23, 1986, that the IRS consider the prospect of abating interest under section 6404(e). According to plaintiffs, when the plaintiffs' representative met with the IRS representative, he was told that the IRS could not consider abatement of interest. Plaintiffs' counsel was advised that no guidelines had been provided by the IRS as to how to handle these matters and that, in any event, he could not, from the view of office politics, state that the District Director's office had behaved unreasonably. Counsel for plaintiffs states that he then advised the IRS representative that plaintiffs would deal with the abatement of interest elsewhere. The defendant contends that no conversation regarding abatement of interest took place.

On December 30, 1986, the taxpayer's representatives submitted Forms 870–AD for each taxpayer. Some issues directly and indirectly affected more than one entity.[2] The Forms 870–AD covered all periods involved in the settlement. On March 12, 1987, Sylvia Turnage, an Associate Chief of the Atlanta Appeals Office, executed the Forms 870–AD, and thereby accepted the agreement on behalf of the IRS. The Form 870–AD executed on behalf of Horton Homes, Inc. provided that it was "conditioned upon IRS acceptance of accompanying Form 870–AD relating to refunds due Horton International, Inc." The Consolidated Supporting Statement, for all taxpayers and periods, identified 29 issues for settlement.

All of the Forms 870–AD included the following language:

> Pursuant to the provisions of section 6213(d) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue law, the undersigned offers to waive the restrictions provided in section 6213(a) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue laws, and to consent to the assessment and

---

1. Plaintiffs object to the characterization of the handling of these cases as a "package deal." However, the court is convinced that the government's description of the handling of these cases as a "package deal" is correct. All of the parties were represented by the same counsel. The 870–d signed by Horton International was made contingent upon the IRS giving certain concessions to Horton Homes, and the parties are all connected.

2. One issue was whether "consulting fees" paid to Horton International, Inc., by Horton Homes, Inc., in the amount of $100,000, $175,000, $200,000, $160,000 and $250,000 for the taxable periods 7808, 7908, 8008, 8108, and 8208, respectively, should be disallowed as business expenses. Settlement of this issue caused correlative adjustments to the income and expenses of Horton International, Inc. and Horton Homes, Inc. and effected the tax liability of N.D. Horton, Jr.

collection of the following deficiencies with interest as provided by law. The undersigned offers also to accept the following overassessments as correct:

\* \* \* \* \* \*

This offer is subject to acceptance for the Commissioner of Internal Revenue. It shall take effect as a waiver of restrictions on the date it is accepted. Unless and until it is accepted, it shall have no force or effect.

If this offer is accepted for the Commissioner, *the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculations, deficiencies or overassessments resulting from adjustments made under Subchapters C and D of Chapter 63 concerning the tax treatment of partnership and subchapter S items determined at the partnership and corporate level, or excessive tentative allowances of carrybacks provided by law; and no claim for refund or credit shall be filed or prosecuted for the year(s) stated above other than for amounts attributed to carrybacks provided by law.*

NOTE:—*The execution and filing of this offer will expedite the above adjustment of tax liability. This offer when executed and timely submitted, will be considered a claim for refund for the above overassessments, as provided in Revenue Ruling 68–65, C.B. 1968–1,555. It will not, however, constitute a closing agreement under section 7121 of the Internal Revenue Code.* (emphasis added).

If this offer is executed with respect to a year for which a JOINT RETURN OF A HUSBAND AND WIFE was filed, it must be signed by both spouses unless one spouse, acting under a power of attorney, signs as agent for the other.

If the taxpayer is a corporation, the offer shall be signed with the corporate name followed by the signature and title of the officers authorized to sign.

This offer may be executed by the taxpayer's attorney or agent provided this action is specifically authorized by a power of attorney which, if not previously filed, must accompany the form.

Pursuant to the executed Forms 870–AD, on December 22, 1986, Horton Homes paid $652,258.87 in tax and $592,715.86 in interest; N.D. Horton, Sr. and Maude Horton paid $36,077.31 in tax and $41,857.34 in interest; N.D. Horton, Jr. and Jacquelyn Horton paid $39,536.16 in tax and $45,-850.34 in interest. Due to the settlement agreement, on May 27, 1987, the Internal Revenue Service issued a refund to Horton International, Inc. in the amount of $240,-482.82, including $102,482.82 in interest. As a result of the package settlement agreement, the combined tax deficiencies of the related taxpayers was decreased from $1,566,852.94 to $732,322.14.

After the Forms 870–AD were executed settling the cases, plaintiffs filed Forms 843 claims for refund with the IRS on October 7, 1987. Plaintiffs Horton Homes, Inc., N.D. Horton, Jr. and Jacquelyn P. Horton, N.D. Horton, Sr. and Maude Horton seek by these claims for refund to recover, respectively, $478,267.22, $34,-467.44, and $31,245.49 in interest paid for the years subject to the settlement beginning after January 1, 1979, alleged to have been erroneously collected from them, plus interest from date of payment. The defendants took no action on the plaintiffs' claim for refund.

On August 31, 1988, plaintiffs filed the instant actions with this court seeking the recovery of interest paid which plaintiffs allege was illegally assessed and collected. Plaintiffs base their claim for refund solely on section 6404(e)(1) of the Internal Revenue Code of 1986. Defendants answered the plaintiffs complaint denying that plaintiffs were entitled to a refund.

Subsequently, the defendant filed a motion to dismiss or in the alternative, motion for summary judgment. Plaintiffs have filed a response to defendant's motion and a cross-motion for partial summary judgment as to defendant's equitable estoppel defense. A hearing was held on December 19, 1989. After due consideration of the briefs submitted by the parties, the arguments contained therein, and the relevant

case law, the court issues the following order.

## DISCUSSION

 As a threshold matter the court must address the defendant's argument that this court lacks subject matter jurisdiction over plaintiffs' complaints. Defendant argues that the plaintiffs in these cases cannot avail themselves of section 1346 because the facts plainly demonstrate that there has been no tax or interest which has been illegally or erroneously assessed or collected; nor do plaintiffs allege in their complaints that taxes have been erroneously or illegally assessed or collected. Defendant further argues that even if the court has subject matter jurisdiction to hear plaintiffs' claims, the decision of the IRS to abate, or not to abate, interest pursuant to 26 U.S.C. § 6404(e)(1) is not judicially reviewable.

Plaintiffs contend that the court does have subject matter jurisdiction pursuant to 28 U.S.C. Sections 1340 and 1346.[3] Title 28 U.S.C. § 1346(a)(1), provides in relevant part:

(a) The district courts shall have original jurisdiction ... of:

(1) Any civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws.

Plaintiffs argue that the IRS's refusal to abate interest pursuant to Internal Revenue Code § 6404(e) was the erroneous or illegal assessment or collection of "any sum" under the Internal Revenue Code and, therefore, the court has subject matter jurisdiction pursuant to section 1346(a)(1). Plaintiffs also argue that the

IRS's decision to abate interest or not to abate interest is reviewable under an abuse of discretion standard.

This court rejects plaintiffs' attempt to establish jurisdiction over the instant claims under § 1346(a)(1). As plaintiffs state in their brief in opposition to defendant's motion to dismiss, "[t]he gist of Plaintiffs' complaint is that the IRS abused its discretion by not abating interest pursuant to Internal Revenue Code Section 6404(e)(1). . . ." This does not amount to an allegation that interest has been erroneously or illegally collected. In the case *sub judice*, the correct amount of taxes is not at issue. The dispute centers around the non-action of the IRS, *i.e.*, the refusal of the IRS to abate interest pursuant to section 6404(e)(1). Section 1346 does not confer jurisdiction upon this court to hear a case regarding an IRS determination not to abate interest. By making the IRS's decision to abate interest discretionary rather than mandatory under § 6404(e), Congress limited a taxpayer's substantive right to compensation from the government for assessed interest. *Brahms v. United States*, 18 Cl.Ct. 471 (1989). The broad grant of jurisdiction of § 1346 cannot negate Congress' specific and focused intent with respect to interest abatement in § 6404(e). *Id.* at 472. Section 1346 applies to erroneous collections in general; section 6404(e) applies specifically to erroneous collection of interest. *Id.* Thus, this court finds that it does not have jurisdiction to hear plaintiffs' claims. However, out of an abundance of caution, the court will proceed to address plaintiffs' other contention.

 Plaintiffs also argue that the IRS's decision to abate interest or not to abate interest is reviewable under an abuse of discretion standard. Plaintiffs seek an abatement of interest pursuant to 26 U.S.C.

**3.** 28 U.S.C. § 1340 provides in relevant part: The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court.

Section 1340 does not in itself constitute a waiver of sovereign immunity. *Essex v. Vinal*, 499 F.2d 226, 231–232 (8th Cir.1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975).

§ 6404(e)(1) (Supp. V 1987) (1982). Section 6404(e)(1) provides:

(e) *Assessments of interest attributable to errors and delays by internal revenue service.*

(1) *In general.*—In the case of any assessment of interest on—

(A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or

(B) any payment of any tax described in section 6212(a) to the extent that any error of delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

Section 6404(e) allows a taxpayer to request an abatement of interest from the IRS when the interest assessment is attributable to IRS error or delay after the IRS has contacted the taxpayer in writing with respect to such deficiency or payment. In the case *sub judice*, the IRS denied plaintiffs' request for an abatement. Plaintiffs now ask this court to review the IRS's denial of their request for an abatement.

The Administrative Procedure Act (APA) provides the framework for determining when a court may review an agency's decision. 5 U.S.C. §§ 701–706 (1982). The APA is not a jurisdictional statute, but merely outlines procedures for judicial review of administrative action. Courts look to the APA to determine whether Congress intended to preclude judicial review of the agency action at issue. The APA's "Right of Review" provision establishes a presumption that courts may review agency decisions. 5 U.S.C. § 702 provides, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

However, the APA places two limitations on this presumption. 5 U.S.C. § 701(a)(1) states that the presumption does not apply when "statutes preclude review." A party can successfully invoke this limitation by clearly and convincingly showing that Congress intended to preclude review in a particular statute. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967). In the context of preclusion analysis, the "clear and convincing evidence" standard is not a rigid evidentiary test but a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling. *Block v. Community Nutrition Institute*, 467 U.S. 340, 351, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984). The court has found the standard met, and the presumption favoring judicial review overcome, whenever the congressional intent to preclude judicial review is "fairly discernible in the statutory scheme." *Id.*

Even if Congress did not clearly and convincingly evince an intent to preclude judicial review of agency action, the presumption of reviewability does not operate when "agency action is committed to agency discretion." 5 U.S.C. § 701(a)(2). This limitation on the presumption applies where Congress has drafted a statute so broad that in a given case there is no law to apply. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Therefore, "even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Only if a specific statute somehow limits the agency's discretion to act is there sufficient "law to apply" so as to allow judicial review. *City of Santa Clara v. Andrus,*

572 F.2d 660, 666 (9th Cir.1978), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978). Whether and to what extent a particular statute precludes judicial review is determined from its express language, the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved. *Block v. Community Nutrition Institute,* 467 U.S. at 345, 104 S.Ct. at 2453.

In drafting section 6404(e)(1), Congress used the word "may" instead of "shall" in describing the IRS's authority to abate assessments of interest attributable to "error or delay" by IRS officials in performing their ministerial duties. The use of the word "may" makes the power of the IRS to abate interest discretionary or permissive rather than mandatory. *Bergen v. United States,* 213 Ct.Cl. 609, 612 n. 3, 562 F.2d 1197, 1198 n. 3, *cert. denied,* 434 U.S. 939, 98 S.Ct. 428, 54 L.Ed.2d 298 (1977). (May, unlike shall, is a word of permission). The language of section 6404(e), taken in its entirety, demonstrates that Congress carefully distinguished between discretionary and mandatory abatement of interest. In section 6404(e)(1), Congress used "may," but in 6404(e)(2), used "shall" to establish the IRS's mandatory duty to abate interest assessed on erroneous refunds.[4] Thus, it is clear that Congress used the term "may" in a permissive sense.

Moreover, the Committee Reports on the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2762, explaining Code Section 6404(e)(1) states, "The bill gives the IRS the authority to abate interest but does not mandate that it do so...." H.R.Rep. No. 99–426, 99th Cong., 1st Sess. at 844 (1986–3 Cum.Bull. (Vol. 2) v, 844); S.Rep. No. 99–313, 99th Cong., 2d Sess. at 208 (1986–3 Cum.Bull. (Vol. 3) v, 208). Similarly, section 301.6404–2T of the Temporary Procedure and Administration Regulations under the Tax Reform Act of 1986 provides:

(a) *In general.* Section 6404(e)(1) provides that the Commissioner may (in his or her discretion) abate the assessment of all or any part of interest on....

Based upon the express language of the statute itself, the legislative history and the interpretive regulations, it is clear that the statute involved herein is a "permissive" and not a "mandatory" statute. The court finds *508 Clinton Street Corp. v. Commissioner of Internal Revenue,* 89 T.C. 352, 356 n. 7 (1987), to be unpersuasive. Similarly, the court is unpersuaded by *Magnone v. United States,* Nos. 89–1837, 89–1838, 1989 WL 123081 (S.D.N.Y. Oct. 12, 1989) (LEXIS 12251). The court is not persuaded that by enacting § 6404(e) Congress intended to create a cause of action for the taxpayer. Rather, the court believes that Congress intended to grant to the Secretary the authority to abate interest on a deficiency under the circumstances prescribed in § 6404(e) at his discretion. If Congress had wanted to give the taxpayer an absolute right to an abatement, it could have easily done so by substituting "shall" for "may." Congress has committed the decision of whether or not to abate interest to the discretion of the Secretary and has not established any guidelines by which this court might review the Secretary's determination. Therefore, this court finds that it does not have jurisdiction to review the IRS's determination that plaintiffs are not entitled to an abatement of interest.

Having found that this court lacks subject matter jurisdiction over the instant actions and the authority to review the IRS's decision not to abate interest pursuant to section 6404(e)(1), the court does not reach defendant's equitable estoppel argument.

The court finds that 28 U.S.C. § 1346 does not confer subject matter jurisdiction upon this court to hear plaintiffs' claims. The court further finds that even if it had subject matter jurisdiction over the instant actions, it would not have the authority to review the Secretary's determination not to abate interest pursuant to 6404(e)(1). The language used in section 6404(e)(1) is permissive. It allows the IRS to abate inter-

---

**4.** 26 U.S.C. § 6404(e)(2) provides in relevant part:

*Interest abated with respect to erroneous refund check.*—The Secretary shall abate the assessment of all interest on any erroneous refund under section 6202 until the date demand for repayment is made....

est attributable to its own error or delay in performing a ministerial act, but does not mandate that it do so. Thus, it was not wrongful for defendant to refuse to grant an abatement when section 6404(e)(1) expressly permits it to so refuse.

For the reasons stated above, the defendant's motion to dismiss is GRANTED; the plaintiffs' motion for partial summary judgment as to defendant's equitable estoppel defense is DENIED as moot; and, plaintiffs' actions are DISMISSED with prejudice.

SO ORDERED.