HORTON HOMES, INC., N.D. Horton, Jr., Jacqueline P. Horton, N.D. Horton, Sr. and Maude Horton, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 90–8225.

United States Court of Appeals, Eleventh Circuit.

July 23, 1991.

David D. Aughtry, George L. Murphy, Jr., Chamberlain, Hrdlicka, White, Johnson & Williams, Atlanta, Ga., Shelly Cashion, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, Tex., for plaintiffs-appellants.

Frank L. Butler, Asst. U.S. Atty., Macon, Ga., Gary E. Allen, Lead Counsel, Chief, Francis M. Allegra, Brian C. Griffin, Ann B. Durney, Jonathan S. Cohen, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Before TJOFLAT, Chief Judge, CLARK, Circuit Judge, and KAUFMAN *, Senior District Judge.

FRANK A. KAUFMAN, Senior District Judge:

This appeal raises questions concerning the abatement of interest by the Internal Revenue Service (IRS) on income tax deficiencies. Prior to 1986, the IRS did not "generally have the authority to abate interest charges where the additional interest has been caused by IRS errors and delays." [1]

Effective January 1, 1986, the Congress enacted what is now 26 U.S.C. § 6404(e)(1). That statute, in relevant part, provides:

(e) **Assessments of interest attributable to errors and delays by Internal Revenue Service.—**

(1) **In general.**—In the case of any assessment of interest on—

(A) Any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or

. . . .

the Secretary *may* abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

(Emphasis supplied).

## I.

In this case, the IRS executed an agreement on March 12, 1987 (the agreement) with plaintiffs-appellants (the Hortons) [2] pursuant to which the Hortons agreed to pay certain tax deficiencies claimed by the IRS, plus interest thereon.[3] In the agree-

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

**1.** Report of the Committee on Ways and Means of the House of Representatives on H.R.Rep. 3838 (Tax Reform Act of 1985), 99th Cong., 1st Sess. 844 (1985). Almost identical language appears in the Reports of the Committee on Finance of the United States Senate, 99th Cong., 2d Sess. 208 (1986), in the Conference Report, 99th Cong., 2d Sess. II–810, *reprinted in* 1986 U.S.Code Cong. & Admin.News 4898–99, and in the General Explanation of the Tax Reform Act of 1986 prepared by the staff of the Joint Com-

mittee on Taxation of the Congress, 99th Cong., 2d Sess. 1309 (1987).

**2.** The "Hortons" are four individuals, namely, father, mother, son and daughter-in-law, and a corporation, all of the stock of which was owned at all relevant times by one or more or all of those four individuals.

**3.** Those deficiencies related to calendar and fiscal years commencing not earlier than January, 1978 and ending not later than December 31, 1982. The IRS also determined deficiencies for certain of those years with respect to certain

ment, the Hortons "consent[ed] to the assessment and collection of the following deficiencies with interest as provided by law." Prior to executing the agreement, the Hortons asked the IRS to abate the assessment of all or part of the interest on the basis that the IRS had been responsible for certain delays which prevented the agreement from having earlier been finalized. Seemingly, the IRS never formally responded at any time to that interest abatement request, although, according to the Hortons, an IRS official, before March 12, 1987, orally advised counsel for Hortons that "office politics" prevented the IRS from admitting that it had behaved unreasonably in causing the alleged delay. In any event, the IRS did not act under section 6404(e)(1) to abate any of the interest.

On August 31, 1988, the Hortons filed the first of three tax refund cases in the United States District Court for the Middle District of Georgia. Those cases were subsequently consolidated into the within litigation, in which the government filed motions to dismiss, contending that the district court lacked subject matter jurisdiction but that even if such subject matter jurisdiction existed, the Hortons were not entitled to any relief as a matter of law. *Inter alia*, the government asserted that the Hortons were estopped from seeking the refund of interest on the grounds that the agreement expressly called for the payment of specific amounts not only of tax but also of interest. The Hortons sought discovery but were not permitted to engage in any discovery before the district court granted the government's motion to dismiss, concluding that it had no subject matter jurisdiction, and that even if subject matter jurisdiction were present, it lacked authority to review the determination of the IRS not to abate interest. *Horton Homes, Inc. v. United States*, 727 F.Supp. 1450 (M.D.Ga.1990). After judgment was

entered for the government, the Hortons filed the within appeal. We affirm, though for reasons somewhat different than those expressed by the district court.

## II.

28 U.S.C. § 1346 provides in relevant part:

(a) The district court shall have original jurisdiction, concurrent with the United States Claims Court, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....

26 U.S.C. § 6601(e)(1) states that "[a]ny reference" in Title 26 U.S.C. "to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax."

Accordingly, subject matter jurisdiction is present in this Court in this appeal with respect to the refund of interest as sought by the Hortons. *See Trustees of Bulkeley School v. United States*, 628 F.Supp. 802, 803 (D.Conn.1986); *see also Perkins v. Commissioner*, 92 T.C. 749, 752–53 (1989).[4]

## III.

The Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, provides the framework for determining when a court may review a decision of an agency. Section 702 states, in pertinent part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

However, section 701(a) states that the APA does not apply "to the extent that ...

---

other persons and corporate entities whose business affairs, the IRS has indicated, were connected with the business affairs of one or more or all of the Hortons. Those latter deficiencies are not in issue in this appeal.

4. To the extent that the court below and other courts have otherwise indicated, this Court disagrees. *See, e.g., Selman v. United States*, 733 F.Supp. 1444, 1445 (W.D.Okla.1990); *Brahms v. United States*, 18 Cl.Ct. 471, 474–75 (1989).

(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

The first exception set forth in section 701(a) "applies when Congress has expressed an intent to preclude judicial review," *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985), and requires " 'clear and convincing evidence' of a contrary legislative intent [to] ... restrict access to judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), quoting from *Rusk v. Cort*, 369 U.S. 367, 380, 82 S.Ct. 787, 794–95, 7 L.Ed.2d 809 (1962).[5] "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453–54, 81 L.Ed.2d 270 (1984).

In this instance, the legislative history of section 6404(e)(1) is instructive. The various committee reports, as well as the explanation of the staff of the Joint Congressional Committee on Taxation,[6] includes the comments that "authority should be available for the IRS to abate the interest independent of the underlying tax liability when errors or delays with respect to ministerial acts have occurred," [7] and that "where an IRS official acting in his official capacity fails to perform a ministerial act," then the proposed legislation "gives the IRS the authority to abate interest but does not mandate that it do so," with one exception.[8] The same reports also state that

> [t]he committee does not intend that this provision be used routinely to avoid payment of interest; rather it intends that

the provision be utilized in instances where failure to abate interest would be widely perceived as *grossly unfair....* The provision applies *only* to failures to perform *ministerial* acts that occur after the taxpayer has been contacted by the IRS.... The committee intends that the term "ministerial act" be limited to *nondiscretionary acts where all of the preliminary prerequisites, such as conferencing and review by supervisors,* have taken place. Thus, a ministerial act is a procedural action, not a decision in a substantive area of tax law.

*Id.* at 844–45 (emphases supplied). The reports go on to say that "the IRS can issue regulations determining what constitutes a reasonable time for performing various ministerial acts called for by the Code." Parenthetically, it is to be noted that the IRS regulations which have been issued to date with regard to section 6404(e)(1) do not indicate what constitutes a "reasonable time" for the performance of a ministerial act.

Section 6404(e)(1) contains the words "the Secretary *may* abate the assessment of all or any part of such interest for any period" (emphasis supplied), whereas section 6404(e)(2), which deals with interest abatement with respect to erroneous refund checks, provides that "[t]he Secretary *shall* abate the assessment of all interest on any erroneous refund" (emphasis supplied). In that latter regard, the committee reports state the expectation of Congress that "the IRS exercise this authority to abate interest in instances in which it issues an erroneous refund check." Report of the Committee on Ways and Means of the House of Representatives on H.R.Rep. 3838, 99th Cong., 1st Sess. 844, 845 (1985).

The use of the word "may" in section 6404(e)(1) and of the word "shall" in section

---

5. *See also Lindahl v. Office of Personnel Management,* 470 U.S. 768, 778, 105 S.Ct. 1620, 1626–27, 84 L.Ed.2d 674 (1985).

6. *See* n. 1, *supra.*

7. Report of the Committee on Ways and Means of the House of Representatives on H.R.Rep. 3838, 99th Cong., 1st Sess. 844 (1985).

8. That exception relates to certain erroneous refunds. In that connection, section 6404(e)(2) provides that, in general, "[t]he Secretary *shall* abate the assessment of all interest on any erroneous refund...." (Emphasis supplied).

6404(e)(2) does not necessarily mean that Congress intended entirely to exclude judicial review of the exercise by the IRS of its authority pursuant to (e)(1). There are many instances in the tax laws in which judicial review of the exercise by the IRS of discretion pursuant to statutory tax provisions containing the word "may" or similar words has been held available under the APA.[9] But, in this case, the statutory language of (e)(1) itself, plus the latter's legislative history, is very suggestive to the contrary.

### IV.

As to the second exception in 5 U.S.C. § 701, that exception is applicable when agency action has been committed by the Congress to agency discretion. In *Heckler v. Chaney*, 470 U.S. at 830, 105 S.Ct. at 1655, Justice Rehnquist wrote, after discussing both of section 701(a)'s exceptions:

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment *absolutely*. This construction avoids conflict with the "abuse of discretion" standard of review in § 706—if no judicially manageable standards are available for judging how and when an agency should exercise its dis-

cretion then it is impossible to evaluate agency action for "abuse of discretion." (Emphasis supplied).[10]

In this case, those words of the present Chief Justice strike home. Neither the statute itself, nor the legislative history, nor the regulations issued by the IRS provide any "meaningful standard against which to judge the agency's exercise of discretion." *Id.*[11]

### V.

The regulations promulgated with regard to section 6404(e) are set forth in 26 C.F.R. § 301.6404–2T.[12] Those regulations provide, in part, "that the Commissioner may (in his or her discretion) abate the assessment of all or any part of interest on" taxes "attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in an official capacity) in performing a ministerial act." The regulations define "ministerial act" only by giving certain examples. One of the examples deals with a situation in which the initial examination of an income tax return reveals a deficiency and requires the issuance of a notice of deficiency. That example contains these two sentences: "After the taxpayer and the Internal Revenue Service have identified all agreed and unagreed issues, the notice has been prepared and reviewed (including review by District Counsel, if necessary) and any other relevant prerequisites have been completed, the issuance of the notice of deficiency is a ministerial act.

---

**9.** *See, e.g., Thor Power Tool Company v. Commissioner*, 439 U.S. 522, 547–548, 99 S.Ct. 773, 788–89, 58 L.Ed.2d 785 (1979); *Dolese v. Commissioner*, 811 F.2d 543, 546 (10th Cir.1987); *RCA Corp. v. United States*, 664 F.2d 881, 886 (2d Cir.1981), *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982); *Columbia Gas System, Inc. v. United States*, 473 F.2d 1244, 1251 (2d Cir.1973); *Kean v. Commissioner*, 469 F.2d 1183, 1189 (9th Cir.1972); *MOK Partners v. United States*, 673 F.Supp. 918, 920 (N.D.Ill. 1987).

**10.** Section 706 of the APA relates to scope of review.

**11.** All courts which have considered this question have reached that conclusion. *See Selman*

*v. United States*, 733 F.Supp. 1444, 1446 (W.D. Okla.1990) (relying on the decision of the district court in this case); *Magnone v. United States*, 733 F.Supp. 613 (S.D.N.Y.1989); *Smith v. Commissioner*, 61 T.C. 1645 (1991). *See also 508 Clinton Street Corp. v. Commissioner*, 89 T.C. 352 (1987).

**12.** Those regulations are apparently issued under the authority of 26 U.S.C. § 7805 as general regulations rather than under the specific authority of a particular statutory tax provision and are entitled to less weight than if they were issued under such type of specific authority. *See United States v. Vogel*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982). Nevertheless, they are entitled to a considerable degree of weight, as is the legislative history.

The Commissioner may (in his or her discretion) abate interest attributable to a delay in issuing the notice." Those words are revealing because they show that the IRS itself has interpreted section 6404(e)(1) so as to confine its authority to abate interest to instances in which a "ministerial act" is involved, *i.e.*, an act which is to be taken after the IRS officialdom has made up its mind what to do.

In this case, according to the allegations of the Hortons, an IRS agent commenced audits of certain returns of the Hortons about April, 1980. Then, a little over a year later, on May 22, 1981, the IRS wrote to counsel for a corporation with some relationship to the Hortons that audits of most of taxpayers who had invested in that corporation, which group of taxpayers included one or more of the Hortons, were being "suspended," that is, delayed on an indefinite basis. No reason for the suspension was stated in that letter or otherwise appears in the record before us. The contentions of the Hortons further indicate that the agent completed his examination of all of the Hortons' returns involved in this litigation by August, 1982, had drafted a report by that time, but would not issue it; that in late 1983, another IRS agent began the audit of the corporate entity which is one of plaintiffs-appellants, but did not finalize his audit because of the suspension indicated above; that the Hortons repeatedly expressed their desire that the audit be completed because they did not want to pay interest simply because the IRS was holding the matter in suspension; that this situation continued until July, 1984 when certain advice letters were issued to the Hortons; and that thereafter delays by the IRS continued which were, according to the Hortons, in no way justified until, finally, the agreement was finalized on March 12, 1987. There is considerable question as to whether or not the alleged undue delays of the IRS between 1981 and 1987 occurred "[a]fter the taxpayer and the Internal Revenue Service [had] identified all agreed and unagreed issues." *Id.* Thus, it may be that considerably more than "ministerial" action remained to be accomplished by the IRS during any period of alleged delay commencing on May 22, 1981. If so, the IRS lacked authority to abate interest as requested by the Hortons, pursuant to section 6404(e)(1). However, in the context of the record in this appeal, it is not possible for this Court to make a full, clear determination in that regard. But even if the complaint filed in this litigation by the Hortons does relate to one or more "ministerial acts" of delay or error on the part of the IRS, nevertheless, the discretion vested in the IRS by section 6404(e)(1) would appear to bring into play the application of both of the two exceptions of 5 U.S.C. § 701(a).

## VI.

In many instances, Congress has, without using express statutory language, been held by the courts to have indicated that final discretionary authority is to be lodged in the administrative agency, unreviewable by the courts. *See, e.g., Department of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). That case dealt with the issuance and revocation of security clearance to government employees of sensitive defense agencies. "[I]n *Egan,* the Supreme Court indicated that the determination by an agency whether or not to grant an individual access to secret information lies inherently within the discretion of that agency and that therefore it is virtually impossible for the [administrative agency involved] or a court to review the exercise of such discretion by application of objective criteria." *Jamil v. Secretary,* 910 F.2d 1203, 1205–06 (4th Cir.1990). However, even in a context as sensitive as the one which existed in *Egan,* the discretion of the agency, and the unreviewability of the agency's exercise of discretion by a court, may not be absolute. Thus, "it is arguable that [a government employee seeking security clearance] might have a valid claim of denial of his constitutional rights to equal protection and to be free of discrimination because of national origin." *Id.* at 1209. In *Jamil,* the Fourth Circuit, citing to *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053–54, 100 L.Ed.2d 632 (1988), wrote that "before a court con-

cludes that Congress has intended to preclude judicial review of a constitutional claim, that intent must be clear 'in part to avoid the "serious constitutional question" that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.' " 910 F.2d at 1209 n. 6.

During oral argument in this appeal, government counsel all but conceded that if the IRS exercised its discretion under section 6404(e)(1) so as to deny relief on the basis of racial, religious or sex discrimination, such misuse of discretion would be reviewable. This Court agrees. But this Court also agrees with the government that short of such a constitutional contention, judicial review of IRS's exercise or nonexercise of discretion under section 6404(e)(1) is not available. If the Congress wants the federal courts to review whether the IRS has abused its discretion under section 6404(e)(1) by not granting relief to a taxpayer because of delay by the IRS, then either the Congress must appropriately define what constitutes such a delay, or the Congress must require the Secretary by regulation so to do, or the Secretary, pursuant to his general authority under 26 U.S.C. § 7805, must so do.

## VII.

In sum, section 6404(e)(1) uses general language, the legislative history emphasizes the discretion of the IRS, and the regulations limit the use by the IRS of the statutory authority. In that context, for the reasons set forth in this opinion, each of 5 U.S.C. § 701(a)(1) and (a)(2) is applicable and bars a federal district court from exercising its jurisdiction to review the failure of the IRS to abate interest pursuant to section 6404(e)(1). Therefore, the judgment below is AFFIRMED.