ESTATE OF JACK H. SATIN, DECEASED, AND ESTATE OF TYBIE D. SATIN, DECEASED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Satin v. Commissioner
Docket No. 26372-86
United States Tax Court
T.C. Memo 1994-435; 1994 Tax Ct. Memo LEXIS 441; 68 T.C.M. (CCH) 607; August 25, 1994, Filed *441 An appropriate order will be entered denying petitioners' motion to restrain collection of additions to tax under section 6653(a) and increased interest under section 6621(c) as moot, denying respondent's motion for entry of decision and granting petitioners' motion for entry of decision in that a decision reflecting the foregoing and concessions herein shall be entered pursuant to Rule 155. For petitioners: Ron B. Barber, Richard K. Gradel, and James Stamper (specially recognized). For respondent: Mary P. Hamilton and William T. Hayes. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. *442 OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: This case is before the Court on petitioners' motion to restrain collection under Rule 55 and on motions for entry of decision filed by both petitioners and respondent. Respondent has administratively restrained collection procedures during our consideration of this matter, so petitioners' motion to restrain collection has become moot. Petitioners assert that respondent improperly assessed additional income tax, additions to tax, and interest under the peculiar circumstances of this case. The underlying issue involves the proper interpretation and enforcement of a Stipulation of Settlement (the piggyback agreement) executed by petitioners' counsel and by respondent. The interpretation of the Stipulation of Settlement is the only issue remaining in dispute in this case. Respondent determined a deficiency of $ 28,232 in the joint Federal income tax of Jack H. Satin and Tybie D. Satin for 1982 and additions to tax for that year in the amount of $ 5,633 under section 6659 for valuation overstatement, in the amount of $ 1,411.60 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in an amount equal *443 to 50 percent of the interest due on the underpayment attributable to negligence. Respondent also determined that interest on deficiencies accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c), I.R.C. 1986. [2] Petitioners dispute only respondent's assessment of the additions to tax under section 6653(a) and increased interest under section 6621(c). Petitioners contend that they are not liable for the disputed additions to tax and increased interest under the terms of a piggyback agreement executed by counsel and filed with this Court, and we agree. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. At *444 the time the petition was filed, Jack H. Satin resided in Tulsa, Oklahoma. Petitioners' decedents Jack H. Satin and Tybie D. Satin filed their joint 1982 Federal income tax return with the Internal Revenue Service at Tulsa, Oklahoma. Jack H. Satin and the Estate of Tybie D. Satin filed an amended Federal income tax return for taxable year 1982 with the Internal Revenue Service at Austin, Texas, on May 13, 1985. [3]
This case is part of a litigation project designated as the Plastics Recycling cases. In 1982 Jack H. Satin acquired a 2.91- percent limited partnership interest in Esplanade Associates, a partnership *445 which is part of the Plastics Recycling group. See Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993), a decision on the merits with respect to a Plastics Recycling case for a pre- TEFRA year. Esplanade Associates purported to lease six Sentinel EPE Recyclers. Petitioners' decedents claimed their pro rata share of partnership losses and tax credits on their 1982 joint Federal income tax return. Respondent disallowed petitioners' decedents claimed losses and investment credit related to Esplanade Associates for taxable year 1982. On June 9, 1987, this Court conducted a pretrial conference with counsel for the parties to Plastics Recycling cases for the purpose of setting guidelines for trial or other disposition of this group of cases. Petitioners' case was not identified as part of the Plastics Recycling project until after the date of the Order which calendared the pretrial conference. Petitioners' counsel, however, represented other identified Plastics Recycling cases at the time of the Order and was invited to participate at the pretrial conference. In lieu *446 of making an appearance at the pretrial conference, petitioners' counsel filed a written statement with the Court on behalf of Carl Fisher and Rachel Fisher, petitioners in docket No. 28033-86, with which this case was heard and briefed on the pending motions, and on behalf of others. At the pretrial conference, counsel for numerous taxpayers and respondent's counsel discussed selection of test cases for the Plastics Recycling group. Counsel discussed the common issues and distinguishing factors of various Plastics Recycling cases. The attorneys present at the pretrial conference agreed that two cases involving an owner of recycling equipment would be test cases. One of those cases concerned taxable year 1981 and the other concerned taxable year 1982. In addition, the attorneys agreed that probably at least one case involving a taxpayer who was a partner in one of the partnerships which leased the recycling equipment would be chosen as another test case. On June 12, 1987, this Court ordered that the lead counsel for taxpayers in Plastics Recycling cases and respondent designate test or lead cases which would present all issues involved in the Plastics Recycling cases. In a *447 letter dated August 14, 1987, respondent notified the Court that lead counsel for taxpayers and respondent had selected the following docketed cases as the lead cases in the Plastics Recycling group: (1) Fine v. Commissioner, docket No. 35437-85; (2) Miller v. Commissioner, docket No. 10382-86; and (3) Miller v. Commissioner, docket No. 10383-86. In early 1988, the Fine case was concluded without trial. The parties, thereafter, selected, and the Court designated, the case of Provizer v. Commissioner, supra, docket No. 27141-86 as a lead case along with the two Miller cases. In the letter of August 14, 1987, respondent stated: The Court already has identified the two Miller cases as lead cases. Those two cases should serve as lead cases for all petitioners who were involved as owners of equipment in Plastics Recycling investments and along with the Fine case, as lead cases for all issues common to the project. The Fine case raises issues from petitioners' involvement in the Phoenix Recycling Group partnership and should serve as the lead case for all petitioners who were involved as lessees of equipment in Plastics *448 Recycling investments and, along with the two Miller cases, as the lead case for all issues common to the project.
The letter was designated by respondent's counsel as a joint report to the Court and was mailed to all taxpayers or their representatives involved in the Plastics Recycling project, including petitioners' counsel. At the pretrial conference, respondent was asked to prepare Stipulation of Settlement agreements (piggyback agreements) with respect to the Plastics Recycling project, so that taxpayers who did not wish to litigate their cases individually could agree to be bound by the results of the lead cases. After the lead counsel for taxpayers and respondent had agreed upon the lead cases, respondent's counsel prepared piggyback agreements and offered them to counsel for the taxpayers in this case and to other taxpayers. The piggyback agreement, which is the underlying subject of this motion, was signed by counsel representing the parties in this case and was filed with the Court on September 12, 1988. Under the piggyback agreement, petitioners agree to be bound by the results of the three test cases. The piggyback agreement provides: STIPULATION OF SETTLEMENT *449 FOR TAX SHELTER ADJUSTMENTS With respect to all adjustments in respondent's notice of deficiency relating to the Plastics Recycling tax shelter, the parties stipulate to the following terms of settlement: 1. THE ABOVE ADJUSTMENT IS THE ONLY ISSUE IN THIS CASE; 2. The above adjustments, as specified in the preamble, shall be determined by application of the same formula as that which resolved the same tax shelter adjustments with respect to the following taxpayers: Names(s): Harold M. Provizer and Joan Provizer v. Commissioner of Internal Revenue
Tax Court Docket No.: 27141-86
Names(s): Elliot I. Miller v. Commissioner of Internal Revenue
Tax Court Docket No.: 10382-86
Names(s): Elliot I. Miller and Myra K. Miller v. Commissioner of Internal Revenue
Tax Court Docket No.: 10383-86
(hereinafter the CONTROLLING CASE); 3. All issues involving the above adjustments shall be resolved as if the petitioners in this case was/were the same as the taxpayers in the CONTROLLING CASE; a. If the Court finds that any additions to tax or the section 6621(c) interest are applicable to the underpayment attributable to the above-designated tax shelter *450 adjustments, the resolution of the tax shelter issue and the applicability of such addition to tax or interest to that tax shelter issue in the CONTROLLING CASE, whether by litigation or settlement, shall apply to petitioners as if the petitioners in this case was/were the same as the taxpayers in the CONTROLLING CASE; 4. If the adjustment is resolved in the CONTROLLING CASE in a manner which affects the same issue in other years (e.g., * losses in later years or affects depreciation schedules), the resolution will apply to petitioners' later years as if the petitioners in this case was/were the same as the taxpayers in the CONTROLLING CASE; 5. A decision shall be submitted in this case when the decision in the CONTROLLING CASE (whether litigated or settled) becomes final under I.R.C. sec. 7481; 6. If the CONTROLLING CASE is appealed, the petitioners consents to the assessment and collection of the deficiency(ies), attributable to the adjustments formulated by reference to the Tax Court's opinion, notwithstanding the restrictions under I.R.C. sec. 6213(a); 7. The petitioners in this case will testify or provide information in any case involving the same tax shelter adjustment, *451 if requested; and 8. The petitioners in this case consents to the disclosure of all tax returns and tax return information for the purpose of respondent's discovering or submitting evidence in any case involving the same shelter adjustments.
The Miller cases were disposed of by settlement agreement between the taxpayers and respondent in December of 1988. Decision documents based upon those settlements were entered by this Court on December 22, 1988. Pursuant to the settlement, the taxpayers in the Miller cases were not liable for either the additions to tax under section 6653(a) or increased interest for tax-motivated transactions under section 6621(c). None of the taxpayers who had signed "piggyback agreements" in relation to the Plastics Recycling project were Schedule C owners of equipment. Respondent did not notify the taxpayers in this case or any other taxpayers of the settlement of the Miller cases. The Provizer case was decided by this Court on March 27, 1992. Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993). In our Provizer *452 opinion and in the affirmance by unpublished opinion of the Court of Appeals, all of the Plastics Recycling issues were decided for respondent, including the additions to tax under section 6653(a) and increased interest under section 6621(c). On August 17, 1992, respondent assessed tax, additions to tax, and interest for the taxable year 1982 pursuant to our decision in the Provizer case and paragraph 6 of the Stipulation of Settlement in this case, set forth above. Upon receipt of this assessment, petitioners' counsel inquired as to the status of the Miller cases. Respondent did not provide petitioners' counsel information concerning those cases. Thereafter, petitioners' counsel obtained a copy of the settlement decision elsewhere. Upon review of the piggyback agreement and the Miller settlement decision, petitioners' counsel filed their motion protesting respondent's assessment. In their brief petitioners also request administrative and litigation costs under section 7430. The parties subsequently filed separate motions for entry of decision. OPINION The motions for entry of decision here under consideration involve the interpretation and enforcement of a Stipulation *453 of Settlement (the piggyback agreement) entered into by petitioners and respondent. The term "Stipulation of Settlement" in this case is essentially a misnomer. The piggyback agreement did not settle or compromise the matters in dispute but merely prescribed a procedure whereby those matters would be adjudicated. See Adams v. Commissioner, 85 T.C. 359, 369 (1985). Nonetheless, the agreement is still a stipulation under Rule 91. Rule 91(e) provides that the Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. Neither respondent nor petitioners ask us to set aside the piggyback agreement; both assert that the agreement is clear and unambiguous and should be enforced according to its terms. An agreement is a manifestation of mutual assent. Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983); Webster v. Commissioner, T.C. Memo. 1992-538. The piggyback agreement clearly reflects the parties' mutual assent to settle the case upon disposition of "the CONTROLLING CASE." The parties *454 dispute which cases are binding with respect to the issues of additions to tax under section 6653(a) and increased interest under section 6621(c). Petitioners maintain that the clear language of the piggyback agreement binds them to the results of all three of the cases which are designated as "the CONTROLLING CASE" in the piggyback agreement. Petitioners contend that they are entitled to the most favorable disposition of "the CONTROLLING CASE" with respect to all issues common to the Plastics Recycling project. They assert that respondent was required to offer them the Miller settlement terms. Respondent on the other hand asks us to interpret the piggyback agreement so that petitioners are only bound by the results of the Provizer case and are, therefore, liable for the additions to tax under section 6653(a) and increased interest under section 6621. Respondent contends that the intent of the parties at the time of executing the piggyback agreement was that all partners of partnerships that leased the recycling equipment would be bound by the results of the Provizer case, and all nonpartner owners of such equipment would be bound by the results of the Miller *455 cases. We disagree with both parties' suggested interpretations of the piggyback agreement. Our view is that under the piggyback agreement petitioners were bound to the results in all three lead cases with respect to the issues of additions to tax under section 6653(a) and increased interest under section 6621(c). We further interpret the piggyback agreement as imposing an obligation on respondent upon disposition of two of the lead cases, the Miller cases, to notify petitioners of the disposition. After being notified of the disposition in those two lead cases, petitioners could elect to accept the same settlement terms as the Miller cases with respect to the common issues of the cases or to be bound by the results of the Provizer case. We do not hold that petitioners necessarily are entitled to the most favorable disposition of "the CONTROLLING CASE." If they had been informed of the settlement of two of the lead cases, petitioners would not have been entitled to wait until all of the lead cases had been resolved and then select the one whose resolution was most favorable to them. Under the unusual circumstances of this case, respondent agreed with petitioners that *456 the case would be controlled by the results in the Miller cases and the Provizer case, but respondent failed to notify petitioners of the disposition of the Miller cases. The record indicates that respondent consistently has refused to inform petitioners of the disposition of the Miller cases. Petitioners had no information about the resolution of those cases until after respondent commenced collection action on the basis of the Provizer decision and paragraph 6 of the Stipulation of Settlement. Respondent contends that the agreement provides that partnership cases are controlled by the result in the Provizer case and that the Miller cases relate only to cases involving direct nonpartner ownership of machines and therefore are irrelevant to petitioners' case. We disagree with this interpretation. Under the peculiar, if not unique, circumstances of this case where petitioners had no knowledge of the results in two of the controlling cases and were kept from such knowledge by respondent, petitioners were entitled to choose to be bound by the Miller cases when they ultimately learned of the disposition of those agreed controlling cases. A settlement *457 stipulation is a contract. Smith v. Commissioner, T.C. Memo. 1991-412; see Robbins Tire and Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969); Dalco Micro-Fab Partners, Ltd. v. Commissioner, T.C. Memo. 1993-100. General principles of contract law are applied in construing a settlement agreement. United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975). On brief petitioners argue that the law of Oklahoma should apply in interpreting the piggyback agreement. Respondent asserts that Massachusetts contract law should govern. We see no significant problem here relating to conflicts of law. The parties have not cited any relevant difference in the law of these States concerning the contract interpretation principles applicable here. In addition, the State law which petitioners and respondent cite in their briefs is in accord with general principles of contract law. See Edmonds v. United States, 642 F.2d 877 (1st Cir. 1981); Rink v. Commissioner, 100 T.C. 319 (1993); Mercury Investment Co. v. F.W. Woolworth Co., 706 P.2d 523 (Okla. 1985). *458 Our function is to give the agreement a construction that is reasonable, capable of being carried into effect and in accord with the parties' intentions. See Okla. Stat. Ann. tit. 15, sec. 159 (West 1993); Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 548 N.E.2d 188 (1990); see also Woods v. Commissioner, 92 T.C. 776 (1989). Absent wrongful, misleading conduct or mutual mistake, we will enforce a stipulation of settlement in accordance with our interpretation of its written terms. See Scherr v. Commissioner, T.C. Memo. 1990-225. Generally, we look within the "four corners" of the agreement to ascertain the intent of the parties. Rink v. Commissioner, supra at 325; see Geringer v. Commissioner, T.C. Memo. 1991-32. When an agreement is ambiguous, however, the courts may look to extrinsic evidence to determine the parties' intentions. Woods v. Commissioner, supra at 780-781. In Constitution Pub. Co. v. Commissioner, 22 B.T.A. 426, 428 (1931), *459 the Board defined ambiguity and set forth the applicable law concerning ambiguous contracts, as follows: if the expression used and the language of the instrument is merely ambiguous, the rules of construction with respect to doubtful or ambiguous contracts or documents are applicable here. Upon this ground we have the right and it is our duty to determine what * * * the parties intended by the expression used. An instrument is clearly ambiguous and is open to construction when its words, taken literally, lead to absurdity or have no meaning or when two meanings could be given. * * * It is a primary rule of construction of documents that the Court must if possible ascertain and give effect to the mutual intention of the parties and in doing this greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. * * * [Citations omitted.]
Accordingly, we first look within the "four corners" of the piggyback agreement to ascertain whether the agreement is ambiguous. The agreement defines "the CONTROLLING CASE" as both Miller cases and the Provizer case. The agreement does not *460 differentiate between the three cases, but merely states that all three of the cases are "the CONTROLLING CASE" for purposes of the agreement. In addition, the agreement clearly provides that petitioners are bound by the decisions in "the CONTROLLING CASE" regardless of whether the cases are settled or litigated. The agreement specifically states that petitioners are to be treated as if they were the taxpayers in "the CONTROLLING CASE" for purposes of additions to tax and section 6621(c) interest. Under the terms of the agreement itself, petitioners are bound by the decision or settlement of all three of the lead cases. The piggyback agreement's terms seem clear on the face of the document. However the terms of the agreement lead to absurd results because the three cases that were designated "the CONTROLLING CASE" were not consolidated for trial or settlement and resulted in conflicting outcomes with respect to the issues of additions to tax under section 6653(a) and increased interest under section 6621(c). The two Miller cases were resolved by a settlement that provided that the taxpayers therein were not liable for the additions to tax under section 6653(a) and the increased *461 rate of interest under section 6621(c) did not apply. The Provizer case was decided by this Court, and we decided that the taxpayers in that case were liable for the additions to tax under section 6653(a) and the increased rate of interest under section 6621(c). Since the three cases which were designated "the CONTROLLING CASE" had different results and petitioners were bound to all three cases, it is unclear upon which case petitioners' case is to be decided. The language of the piggyback agreement clearly states that petitioners are bound by the results of all three lead cases in the Plastics Recycling group, but it does not provide for disposition of the case in issue if the three lead cases have divergent results. Therefore, the contract is ambiguous, and we may look to extrinsic evidence to ascertain the parties' intentions. See Smith v. Commissioner, 82 T.C. 705 (1984). Respondent asserts that petitioners were bound solely by the results of the Provizer case. The language of the piggyback agreement does not support that assertion. In addition the extrinsic evidence offered by the parties, when viewed in light of general contract *462 principles, weighs strongly against respondent's position. Respondent maintains that in entering into the piggyback agreement the parties intended for partners of limited partnerships that leased recycling equipment to be bound only by the Provizer case and Schedule C owners of recycling equipment to be bound only by the two Miller cases. Respondent primarily relies upon three documents to support her position: (1) A letter drafted by respondent to the Court indicating which lead cases had been selected by respondent and lead counsel for taxpayers (the joint report); (2) the transcript of the pretrial conference held on June 9, 1987, concerning the selection of test cases for the Plastics Recycling group; and (3) a letter drafted by the Committee for the Defense of Plastics Recycling Tax Shelter Investments. Respondent's counsel's letter, which he labeled a joint report, indicates that partners of lessee partnerships are to be treated differently than Schedule C equipment owners. It states that the two Miller cases are to serve as lead cases for equipment owners and the Fine case (later replaced by Provizer[4]) is to serve as the lead case for lessees of equipment. *463 This is the view expressed by respondent's counsel at the pretrial conference on June 9, 1987, and disputed by taxpayers' counsel at that time. The letter is signed by respondent's counsel but not by taxpayers' counsel, so under the circumstances we are skeptical about its "joint" nature as to details which are not reflected in the executed stipulation. Moreover, the letter clearly states that all issues common to the project should be determined with reference to all three of the lead cases. The additions to tax for negligence under section 6653(a) and increased interest due to tax-motivated transactions under section 6621(c) are issues which are common to all of the cases in the Plastics Recycling group. The record as a whole does not indicate that these issues differ in any material respect for nonpartner owners of recycling equipment *464 and partners of limited partnerships which leased the recycling equipment. The basic circumstances in each case concern the valuation of the recycling equipment, and those circumstances and the values of the identical machines are the same, regardless of whether the machines were held in the name of an individual or a partnership. Additions to tax under section 6653(a) and section 6621(c) increased interest are issues common to all three of the cases that were designated as "the CONTROLLING CASE" and petitioners' case. Respondent's counsels' so-called joint report does not support respondent's interpretation of the piggyback agreement, but instead contradicts it. The transcript of the pretrial conference does not persuade us to adopt respondent's assertion that petitioners were only bound by the outcome of the Provizer case. This Court held a pretrial conference on June 9, 1987, to set guidelines for the disposition of the Plastics Recycling group of cases. At the conference, counsel for the parties discussed selection of test cases and identified issues common to all cases in the Plastics Recycling project. At the time of the pretrial conference all of the cases under *465 discussion, except the two Miller cases, involved investors in limited partnerships which leased the equipment. In response to a question from the Court, the taxpayers' lead counsel indicated that they were confident that if the two Miller cases were chosen as test cases, their clients would sign piggyback agreements binding the decision of their own cases to the outcome of the two Miller cases. It is clear from the transcript that both the taxpayers' counsel and the Court were under the impression that an appropriate stipulation could be prepared so that partnership cases could be piggybacked to the Miller cases. Respondent's counsel, however, clearly stated that he did not believe the Miller cases should be test cases for taxpayers who were investors in lessee partnerships. The transcript of the pretrial conference is not clear as to whether the parties agreed that the Miller cases would only be test cases for nonpartner owners of equipment. Although respondent's counsel clearly stated his belief that the Miller cases should only control so-called ownership cases, the record as a whole does not indicate that such was the intention of the parties at *466 the time they executed the piggyback agreement. The parties chose one partnership case as a test case. That case dealt with equipment which was leased in 1981. Respondent's counsel made it clear at the conference that valuation for 1981 and 1982 differed. Therefore, if the only partnership case concerned valuation issues for the year 1981, apparently respondent was satisfied for the valuation issue in the Miller case dealing with 1982 equipment to control at least valuation issues for purposes of partnership cases dealing with 1982 equipment. Taxpayers' counsel clearly believed that the Miller cases had applicability to the cases involving taxpayers who were investors in lessee partnerships. Indeed taxpayers' lead counsel indicated that he considered the two Miller cases satisfactory lead cases for the entire group litigation. At the time of the pretrial conference, therefore, the parties' intentions concerning the effect of the results of the test cases on partnership cases were not clear. The letter drafted by the Committee For the Defense of Plastics Recycling Tax Shelter Investments does not aid respondent. The letter dated July 17, 1992, was an invitation *467 and plea for Plastics Recycling taxpayers to contribute to a fund to finance the appellate litigation in the Provizer case. The letter was sent generally to taxpayers in the Plastics Recycling project, not just to taxpayers who had executed piggyback agreements, and it was prepared and mailed almost 4 years after petitioners and respondent executed the piggyback agreement. The 1992 letter does not provide any insight into the parties' intentions at the time they executed the piggyback agreement and we consider it irrelevant to the issues in this case. The general contract principle of contra proferentem weighs heavily against respondent in this case. The principle states that an ambiguous provision in a written document is construed more strongly against the person who selected the language. Rink v. Commissioner, at 328 n.8; see, e.g., United States v. Seckinger, 397 U.S. 203, 216 (1970). It is fundamental that doubtful language in a contract should be interpreted against the party who has selected the language. Moulor v. American Life Ins. Co., 111 U.S. 335 (1884); Williams Petroleum Co. v. Midland Cooperatives, Inc., 679 F.2d 815 (10th Cir. 1982). *468 This principle is especially pertinent in this case where respondent is asking us to add language to the agreement which she drafted. If respondent wished that all partners of Plastics Recycling partnerships be bound only by the Provizer case and not by the Miller cases, she should have incorporated such language into the piggyback agreement which she presented to petitioners. See, e.g., Ferguson v. Commissioner, T.C. Memo. 1992-451; see also Minovich v. Commissioner, T.C. Memo. 1994-89, in which the parties stipulated to be bound by specified cases for different issues. Additionally, we note that no Schedule C owners of equipment entered into piggyback agreements with respondent concerning the Plastics Recycling project. If we were to accept respondent's argument, resolution of the Miller cases would be irrelevant to all Plastics Recycling taxpayers, and the reference to the two Miller cases in the piggyback agreements would be superfluous. The language of the piggyback agreement clearly states that petitioners are bound by the results of all three lead cases. After reviewing the extrinsic evidence, *469 we are not persuaded that in executing the piggyback agreement the parties intended to bind petitioners only to the Provizer case as asserted by respondent. Accordingly, we hold that the terms of the piggyback agreement provide that petitioners are bound by the results in all three lead cases with respect to the common issues of additions to tax under section 6653(a) and increased interest under section 6621(c). The three lead cases, however, resulted in divergent results with respect to the issues of section 6653(a) additions to tax and section 6621(c) increased interest. We must therefore decide which result will be applied to petitioners. The two Miller cases were settled in December of 1988. Agreed decision documents for those cases were entered by this Court on December 22, 1988. Respondent did not notify petitioners of this settlement. Since respondent drafted and executed an agreement providing that the parties would be bound, inter alia, by the terms of any settlement of the Miller cases, in our view respondent was obliged to notify petitioners of the settlement of those cases. The terms of the agreement clearly indicate that the results of "the CONTROLLING *470 CASE" are decisive for purposes of the case at hand. There is no indication that petitioners or their attorneys were told of the settlement of the Miller cases by Mr. Miller or his attorneys, and there is no evidence of any reason for Mr. Miller or his attorneys to advise petitioners of the settlement. All taxpayers who had entered into such agreements were entitled to be notified of the final disposition of a lead case. Respondent was aware of both the piggyback agreement and the disposition of two of the lead cases. Respondent had an obligation to notify petitioners of the settlement. Upon notification of the Miller settlement or otherwise becoming aware of that settlement, petitioners had the option of either agreeing to be bound to the terms of the settlement or agreeing to be bound only by the results of the Provizer case. Because petitioners were not notified of the Miller settlement until late 1992, after our decision in the Provizer case, at that time petitioners were entitled to choose which of the lead cases would decide their case. [5] Petitioners made the choice as promptly as practical and are entitled to be bound by the Miller settlement *471 with respect to the matters in dispute here. *472 In their post hearing brief petitioners assert a claim for litigation costs in an unspecified amount pursuant to section 7430. [6] Section 7430(a) provides that the prevailing party in a civil tax proceeding may be awarded reasonable administrative and litigation costs incurred in such proceeding. Administrative and litigation costs may only be claimed, unless conceded by respondent, upon written motion to this Court filed after the issuance of an opinion determining the issues in the case, or after the parties have settled all issues in the case other than litigation costs. Rule 231(a)(2). When petitioners requested litigation costs, significant *473 issues in their case were still undetermined. Petitioners' request is premature and improper in form. They have failed to meet the procedural requirements for an award of litigation costs under section 7430 and Rule 231. To reflect the foregoing, An appropriate order will be entered denying petitioners' motion to restrain collection of additions to tax under section 6653(a) and increased interest under section 6621(c) as moot, denying respondent's motion for entry of decision and granting petitioners' motion for entry of decision in that a decision reflecting the foregoing and concessions herein shall be entered pursuant to Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The notice of deficiency refers to sec. 6621(d). This section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744. For simplicity, we will refer to this section as sec. 6621(c)↩.
3. Both Jack H. Satin and Tybie D. Satin were living when the tax return in issue was filed. Tybie D. Satin died prior to the filing of the amended return for that year. The deficiency notice, dated April 15, 1986, was sent to Jack H. Satin and the Estate of Tybie D. Satin, and the petition was filed by those parties. Subsequently, Jack H. Satin died, and the caption of this case has been appropriately amended.↩
4. In an Order dated June 3, 1988, this Court designated the Provizer case as a replacement for the Fine↩ case as one of the lead cases in the Plastics Recycling group.
5. See Socony Mobil Oil Co. v. United States, 153 Ct. Cl. 638, 649, 287 F.2d 910, 915-916 (1961), requiring the Government to notify the private party to an agreement about settlement of a test case controlling the agreement: It seems that such a premature termination of what was expected to be a test case would not have been anticipated by Texaco, the other party to the suspension agreement. Unless the Government advised it of the settlement, it would have had to be most diligent in watching the District Court's judgment docket in order to file its suit in time after the "final decision" of the test case. We think that when the Commissioner has entered into an agreement for the suspension of the statute of limitations until the final decision in a test case, and thereafter participates in the frustration of the purpose of the agreement by preventing the test case from going to a decision on the merits, a fair interpretation of the agreement makes the suspension run until the earlier of the following two events: (1) The other party to the agreement has had notice of the premature termination of the test case, * * *↩
6. In the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(d), 100 Stat. 2752, Congress amended sec. 7430 effective for amounts paid after September 30, 1986, in civil actions or proceedings commenced after December 31, 1985. The petition in this case was filed on July 7, 1986, and petitioners' motion for ligation costs is thus governed by the provisions of the 1986 Act.↩