PHILLIP S. FRY AND K. SUSAN FRY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 46185-86.          Filed February 16, 1989.

*Roger G. Cotner,* for the petitioners.
*David W. Otto* and *S. Mark Barnes,* for the respondent.

## OPINION

PARR, *Judge:* This case is before the Court on a motion by Attorney Roger G. Cotner (Attorney Cotner) to withdraw as petitioners' counsel of record in this case under Rule 24(c).[1]

Respondent issued separate notices of deficiency dated September 4, 1986 to petitioners, jointly, and to petitioner Phillip S. Fry, individually.[2] Petitioners then retained Attorney Cotner as counsel on September 11, 1986. Attorney Cotner filed the instant motion to withdraw as petitioners' counsel (motion) on January 19, 1989, which was after trial but before opening and answering briefs were set to be filed on February 16 and April 2, 1989, respectively. In his motion, Attorney Cotner cites the following grounds:

1. Roger G. Cotner filed the Petition for petitioners in the case on December 3, 1986.

2. Roger G. Cotner represented petitioners at trial, conducted during a Special Session of this Court beginning on November 15, 1988, in Phoenix, Arizona.

3. Roger G. Cotner is a sole practitioner in Grand Haven, Michigan. He devoted over 478 hours to the case during 1988 and anticipates this significant time commitment to continue well into 1989.

4. Petitioners owe Roger G. Cotner $40,886.73 as of January 6, 1989. Petitioners have failed to meet their financial commitments to Cotner.

5. No fee dispute triggered this Motion.

6. Continued representation of petitioners would seriously jeopardize Roger G. Cotner's law practice and financial health due to the extraordinary time and disbursement commitment and lack of financial remuneration for that time and expenses.

7. Petitioners have failed to timely remit funds to Roger G. Cotner to pay his out-of-pocket costs entailed in this litigation. Petitioners' failure to pay these disbursements contradicts petitioners' ultimate responsibil

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code as in effect during the years at issue.

[2]Respondent determined deficiencies in and additions to petitioners' joint Federal income tax as follows:

| | | Additions to tax | |
|---|---|---|---|
| Calendar year | Deficiencies | Sec. 6653(b) | Sec. 6654 |
| 1977 | $108,999.00 | $54,499.50 | $3,878.57 |
| 1978 | 604,924.70 | 302,462.35 | 19,311.18 |
| 1979 | 1,102,594.23 | 551,297.12 | 46,092.03 |

Respondent also determined a deficiency of $2,436,382.86 in Petitioner Phillip S. Fry's calendar year 1980 Federal income tax and additions to tax under secs. 6653(b) and 6654 of $1,218,191.43 and $155,234.30, respectively.

ity for these litigation expenses, placing Cotner in an untenable ethical position. *See* Michigan Rules of Professional Conduct, Rule 1.8(e); Virginia Code of Professional Responsibility, DR5-103(b)  * * *
    8. Respondent opposes this Motion.
    9. Petitioners Phillip S. Fry and K. Susan Fry oppose Cotner's Motion to withdraw.

Petitioners filed an objection to Attorney Cotner's motion on January 27, 1989, making the representations that they: (1) Have paid Attorney Cotner $38,051.43; (2) have been making substantial monthly payments to him; and (3) dispute certain hours billed by him for services rendered after trial. Petitioners list the following reasons they believe Attorney Cotner's withdrawal at this point in time would prejudice their case:

(1) although the post-trial brief is due Feb. 15, 1989 Mr. Cotner has so far failed to prepare it; (2) Mr. Cotner has all of our evidence and records about this case including, but not limited to, copies of evidence submitted at trial, Mr. Snook's deposition and exhibits, and the trial transcripts; (3) my [i.e. Petitioner Phillip S. Fry's] wife and I are not familiar with Tax Court procedures and would have great difficulty properly presenting the strong merits of our case in the post-trial brief and in properly responding to the government's post-trial brief in our reply brief; (4) it will take time to find a replacement attorney with substantial Tax Court expertise, plus once an attorney is found, it will take him or her a substantial amount of time to become familiar with this complex case and its large amount of evidence; [and] (5) my being a prisoner with no access to my records.

If we grant Attorney Cotner's motion, petitioners request in the alternative that we: (1) Extend the due dates for opening and answering briefs to May 15, 1989, and July 1, 1989, respectively; and (2) order Attorney Cotner to turn over all files and records to petitioners. Petitioners believe that such extension would enable them to find another attorney to represent them.

On January 30, 1989, we ordered as an interim measure that the due dates for opening and answering briefs each be extended 30 days.

On February 6, 1989, Attorney Cotner filed a memorandum in support of his motion (memorandum), whereby he expanded his argument and provided additional information to the Court, including the details of his fee arrangement with petitioners. This information was disclosed only after

Petitioner K. Susan Fry, acting on behalf of petitioners, waived, on January 17, 1989, any attorney-client privilege which may attach to such information.

Attorney Cotner and petitioners have had difficulty throughout the case in arriving at mutually satisfactory payment terms. The original fee arrangement of September 11, 1986, provided for a $500 retainer and monthly payments of all fees and costs. However, petitioners were unable to pay the full amount of payments due, and on April 30, 1988, the original fee arrangement was revised to provide that: (1) Petitioners' account receivable balance as of April 19, 1988, was $10,218.10; (2) petitioners would pay $1,700 per month to be applied to this balance; (3) petitioners would pay all later billings in full by the 15th of each month; and (4) petitioners would pay Attorney Cotner a $10,000 retainer two weeks before trial. Thereafter, petitioners again proved to be unable to keep up with agreed-upon payments. On or about July 5, 1988, the payment terms were revised a second time to provide that: (1) Petitioners would pay $5,000 immediately, and $10,000 on November 1, 1988; and (2) petitioners would pay a $2,500 fixed sum per month plus current costs, beginning on August 15, 1988.

Petitioners kept up with these payments until November 18, 1988, when petitioners paid $2,500 towards the November 1 statement, but withheld payment of costs of $1,025.99. Petitioners later sent a $1,000 check dated December 20, 1988, to Attorney Cotner, and Attorney Cotner requested the balance on December 28, 1988. Petitioners then sent a $1,500 check dated January 11, 1989, to Attorney Cotner. On January 16, 1989, Attorney Cotner notified petitioners of his intent to withdraw as counsel if they did not stand behind their agreement to pay him $2,500 per month by signing a promissory note calling for such payments. The draft of the note provided for 19 monthly payments of principal and interest at an annual percentage rate of 16 percent.[3]

---

[3]In his memorandum, Attorney Cotner conceded that the principal amount of $40,886.73 used in his draft of the note and in his motion was in error, and that the correct amount due was $31,945.67. We believe that this error was unintentional.

On January 28, 1989, the $1,000 check dated December 20, 1988, was returned for insufficient funds. On January 30, 1989, petitioners stopped payment on the $1,500 check dated January 11, 1989. Thus, Attorney Cotner has received no payments from petitioners since November 18, 1988.

We must now decide whether to grant Attorney Cotner's motion.

The Rules govern the practice and procedure in all cases and proceedings in this Court. Rule 1(a). These Rules are to be "construed to secure the just, speedy, and inexpensive determination of every case." Rule 1(b). Rule 24(c)[4] is the specific Rule governing how counsel of record moves to withdraw from a case. This Rule also provides that "The Court may, in its discretion, deny such [a] motion." However, no particular standards are contained in Rule 24(c) for deciding when it is appropriate for counsel to withdraw.

Rule 201(a) provides that "Practitioners before the Court shall carry on their practice in accordance with the letter and spirit of the [Model] Rules of Professional Conduct of the American Bar Association" (model rules).[5] Rule 202 governs disciplinary and reinstatement proceedings for the disqualification, suspension, or disbarment of persons practicing or desiring to practice before this Court. However, this Rule does not "deny to this Court such powers as are necessary for the Court to maintain control over proceedings conducted before it, such as proceedings for contempt under Code Section 7456." Rule 202(e).

A Rule 24(c) motion poses an issue of practice and procedure which is within the Court's jurisdiction and discretion to decide. The model rules, on the other hand, have direct application in evaluating the conduct of those practicing or desiring to practice before this Court under both Rules 201 and 202. Nevertheless, a decision on a Rule

[4]RULE 24. APPEARANCE AND REPRESENTATION

(c) Withdrawal of Counsel: Counsel of record desiring to withdraw his appearance, or any party desiring to withdraw the appearance of counsel of record for him, must file a motion with the Court requesting leave therefor, showing that prior notice of the motion has been given by him to his client, or his counsel, as the case may be, and to each of the other parties to the case or their counsel, and stating whether there is any objection to the motion. A motion to withdraw as counsel shall not be joined to or made part of any entry of appearance. The Court may, in its discretion, deny such motion.

[5]The American Bar Association (ABA) adopted the model rules on Aug. 2, 1983, replacing the earlier ABA Model Code of Professional Responsibility.

24(c) motion clearly has ethical implications which should be taken into account in order to maintain harmony both within our Rules and between our Rules and the model rules.

Model rule 1.16 addresses the termination of the attorney-client relationship for reasons other than the normal conclusion of a case.[6] Model rule 1.16(a) covers when an attorney *must* withdraw from a case, and model rule 1.16(b) covers when an attorney *may* withdraw from a case. However, both paragraphs are subject to the limitation under model rule 1.16(c) that "When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." See *United States v. Accetturo,* 842 F.2d 1408, 1414 (3d Cir. 1988). Thus, the model rules defer to the decision of a court on the issue of whether an attorney may withdraw from a case. If an attorney is permitted to withdraw, model rule 1.16(d) provides for the time and manner of such a withdrawal.

Attorney Cotner's basic argument, as set forth in his motion, has three components. First, he contends that

---

[6]RULE 1.16 DECLINING OR TERMINATING REPRESENTATION

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from representation of a client if:

(1) the representation will result in violation of the rules of professional conduct or other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

(3) the lawyer is discharged.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2) the client has used the lawyer's services to perpetrate a crime or fraud;

(3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

(c) When ordered by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to a client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

petitioners' failure to fully reimburse him for litigation costs advanced by him places him in the untenable position of having a financial stake in the outcome of the case. Second, he contends that petitioners have failed to meet their financial obligation to him regarding payment for his services. Finally, he contends that since he is a sole practitioner and petitioners' case has required substantial time, an unreasonable financial burden has been placed upon him. The common thread of all three components of Attorney Cotner's argument is that the position he claims to be in either has or may affect his ability to exercise independent judgment as petitioners' counsel.

In support of his first contention, Attorney Cotner points to rule 1.8(e) of the Michigan Rules of Professional Conduct, which is identical to model rule 1.8(e). Model rule 1.8(e) provides generally that "A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation." However, "a lawyer may advance court costs and expenses of litigation." Model rule 1.8(e)(1). Under model rule 1.8(j), a lawyer is not permitted to acquire a "proprietary interest" in the outcome of a case, except that a lawyer may acquire an attorney's lien or contract for a contingent fee in certain cases.[7] Model rule 1.16(b)(4) and (5) provides support for Attorney Cotner's second and third contentions, respectively.

In contrast, petitioners' primary argument is that they believe their case will be heavily prejudiced by Attorney Cotner's withdrawal at this late stage of the litigation. Further, they claim to have already paid Attorney Cotner $38,051.43 with respect to this case, but dispute certain fees for services performed after trial. However, petitioner K. Susan Fry stated that she and her currently imprisoned husband intend ultimately to pay Attorney Cotner for undisputed services performed, but are unable to make the

---

[7]The official comment to model rule 1.8 is not authoritative, but explains and illustrates the relationship between model rules 1.8(e) and 1.8(j):

*Acquisition of Interest in Litigation*

Paragraph (j) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these [model] rules, such as the exception for reasonable contingent fees set forth in [model] rule 1.5 and the exception for certain advances of the costs of litigation set forth in paragraph (e). [Model rule 1.8, comment (1983).]

required monthly installments due to existing cash-flow problems.

In considering Attorney Cotner's motion, we also take into account the impact of any such withdrawal on the Court and on respondent:

The theory of [Model] Rule 1.16(c) is that even if a withdrawal is otherwise appropriate—perhaps urgent—precedence must sometimes be accorded to preserving the tribunal's resources and efficiency, as well as to maintaining fairness to opposing litigants. The balance should be struck by the judge or judicial officer, and the lawyer should abide by the decision. * * * [1 G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 297 (1988 rev.).]

Accordingly, in considering whether to grant the instant motion to withdraw under Rule 24(c) we must balance the interests of all those affected, including petitioners, respondent, Attorney Cotner and the Court. A decision on such a question necessarily turns upon the facts and circumstances present in each particular case. Having considered the facts and circumstances giving rise to Attorney Cotner's motion, we are convinced that it should be granted.

A critical factor in our decision is that petitioners have failed to meet their agreed-upon payment terms with Attorney Cotner. See model rule 1.16(b)(4). Petitioners dispute certain fees billed by Attorney Cotner for services rendered after trial, since he has not begun work on their opening brief. However, this limited dispute does not relieve petitioners of their obligation to make agreed-upon payments to reduce the previously accumulated account receivable balance. We can appreciate that petitioners may be experiencing cash-flow problems, but so is Attorney Cotner. Attorney Cotner has been more than reasonable in agreeing to twice revise payment terms to accommodate petitioners' changing financial condition. However, Attorney Cotner has reached a point where he cannot reduce payments further without risking financial ruin. See model rule 1.16(b)(5). Petitioners cannot unilaterally reduce or stop agreed-upon payments and also ask this Court to order Attorney Cotner to continue to represent them.

Nonetheless, we recognize that this is a factually complex case requiring more than 3 days' trial time, and involving some 21 legal issues pointed to in petitioners' pre-trial

memorandum. Total deficiencies and additions to tax of $4,252,900.79 and $2,350,966.48, respectively, are at issue. Accordingly, in order to reduce the risk that Attorney Cotner's withdrawal could prejudice petitioners' case, we grant their alternative request that the due dates originally set for opening and answering briefs by the parties be extended 90 days. Further, we order Attorney Cotner to turn over to petitioners all items in their case file, including his trial notes, that may be useful in the preparation of required post-trial briefs.

To reflect the foregoing,

*An appropriate order will be issued.*

