**Emery I. KLEIN and Diane Klein, Plaintiffs,**

v.

**UNITED STATES of America, Defendants.**

**No. 98–72344.**

United States District Court, E.D. Michigan, Southern Division.

April 13, 1999.

Lawrence S. Jackier, Jackier, Gould, Bloomfield Hills, MI, for Emery I. Klein, plaintiff.

John A. Lindquist, III, U.S. Department of Justice, Tax Division, Washington, DC, for United States of America, defendant.

## OPINION AND ORDER GRANTING PARTIAL MOTION TO DISMISS

ROBERTS, District Judge.

### I. *Background*

This tax related matter is before the Court on Defendant United States of America's Motion to Dismiss [document 19–1].[1] The Court grants Defendant's Motion.

### A.

The unfortunate circumstances of this case arose from Plaintiff Emery Klein's $25,000 investment in a limited partnership, Masters Recycling Associates (hereinafter, "Masters"), in 1982. Masters purportedly leased Sentinel expanded polystyrene ("EPS") recyclers. As a result of his participation in the limited partnership, Plaintiffs Emery and Diane Klein claimed on their 1982 tax return deductions for advance rentals in the amount of $13,104, an investment tax credit of $12,-

833 and a business energy credit of $12,-833. These deductions and credits reduced Plaintiffs' tax burden by $32,218 for 1982. For 1983 and 1984, Plaintiffs claimed deductions in connection with the limited partnership that reduced their liability by $332 and $128 respectively.

By August 1984, the Internal Revenue Service began suspecting that various recycling partnerships, including Masters, were abusive tax shelters. One such recycling limited partnership—Clearwater Group—was held to be a sham in *Provizer v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 2531 (1992), *aff'd* 996 F.2d 1216 (6th Cir.1993) (unpublished).[2] Shortly thereafter, the putative tax matters partner (hereinafter, "TMP") of Masters, Sam Winer, entered into a settlement agreement with the Commissioner of Internal Revenue to adjust partnership items of Masters for the taxable years of 1982 through 1985 (Exhibit 5).[3] Pursuant to the terms of the settlement, the United States Tax Court entered a Decision on February 23, 1994. As a result of that settlement and Decision, the Internal Revenue Service (hereinafter, "IRS") assessed Plaintiffs $32,678—the total of the Masters' related deductions and credits claimed for years 1982 through 1984—plus interest. They were also assessed penalties of $27,846.60. In compliance with the assessments, Plaintiffs paid the IRS $141,-392.85 in 1995.

Plaintiffs then filed timely claims with the IRS for refund of the $141,392.82, which the IRS denied. This action followed. In their Complaint, Plaintiffs request judgment in their favor of $141,-392.85, interest, costs and attorneys' fees. Defendant now moves to dismiss all of Plaintiffs' claims except their request for refund of the assessed negligence penalty.

---

1. Since Defendant concedes that Plaintiffs' claim for abatement of assessed negligence penalties is not subject to dismissal, Defendant's Motion is really one for partial dismissal.

2. *Provizer* concerned Sentinel expanded polyethylene (EPE) recyclers, but the EPS and

EPE recyclers partnerships have been held to be substantially the same. *Davenport Recycling Associates v. Commissioner*, 76 T.C.M. (CCH) 562, 563 (1998)

3. Since Plaintiffs filed no exhibits with their brief, all referenced exhibits are to Defendant's Motion to Dismiss.

## B.

In large measure, Plaintiffs' claims for refund are premised upon their theory that they are not bound by the 1994 Tax Court Decision. Plaintiffs' argue that Winer acted without TMP authority when he (1) extended the deadline for the IRS to file its final partnership administrative adjustment (FPAA) (the document that detailed the IRS's rejection of Masters' taxable income and deductions); (2) filed a Petition for Readjustment of Partnership Items Under Code Section 6226 on behalf of Masters on July 30, 1989; and (3) agreed to the settlement that led to the February 1994 Tax Court Decision.

Although Plaintiffs challenge the propriety of Winer acting as TMP, they do not dispute that, ordinarily, a TMP is authorized to extend deadlines for the IRS to file the FPAA, file petitions for readjustment and agree to settlements that bind the limited partners. Such authority was bestowed when Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), 26 U.S.C. § 6221 et. seq. TEFRA established that the tax treatment of partnership items is determined at the partnership level [4].

Prior to TEFRA, the IRS was required to determine partnership related tax issues on an individual partner basis.

> For income tax purposes, partnerships are not taxable entities. Instead, a partnership is a conduit, in which the items of partnership income, deduction, and credit are allocated among the partners for inclusion in their respective income tax returns.
>
> . . . .
>
> Since a partnership is a conduit rather than a taxable entity, adjustments in tax liability may not be made at the partner-

ship level. Rather, adjustments are made to each partner's income tax return at the time that return is audited. A settlement agreed to by one partner with the internal revenue service is not binding on any other partner or on the service in dealing with other partners. Similarly, a judicial determination of an issue relating to a partnership item generally is conclusive only as to those partners who are parties to the proceeding.

H.R.Conf.Rep. 97–760, Pt. II, 97th Cong., 2d Sess. 467, 599. The House Conference Report further noted that the IRS was required to obtain a consent from each individual partner for which it sought to extend the three year period of limitation to assess a tax. Any consent obtained by the IRS bound only the consenting partner. *Id.*

TEFRA was an effort by Congress to alleviate the inequities in treatment and administrative burden that resulted from determining partnerships related tax issues at the individual partner level.

> Through TEFRA, Congress sought to ensure equal treatment of partners by uniformly adjusting partners' tax liabilities and channeling any challenges to these adjustments into a single, unified proceeding. This system has the additional advantage of abating the administrative burden that would be wrought by multiple, duplicative audits and lawsuits involving numerous partners in a single partnership.

*Kaplan v. U.S.,* 133 F.3d 469, 471 (7th Cir.1998) (citation omitted).

Under TEFRA, the IRS mails the FPAA to the TMP and to all partners who are entitled to notice. 26 U.S.C. § 6223.[5] "[T]he function of the FPAA is to give adequate notice to affected taxpayers that [the IRS] has made a final partnership administrative adjustment for the tax

---

**4.** "Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." Section 6221.

**5.** Under circumstances that do not appear to be relevant to the instant case, the IRS does not have to notify all partners of a partnership. Section 6223(b) and 26 U.S.C. § 6231(a)(8).

years involved." *Seneca, Ltd. v. Commissioner*, 92 T.C. 363, 368, 1989 WL 11484 (1989). For 90 days following the mailing of the FPAA, the TMP has the exclusive right to file a petition with the Tax Court, United States District Court or Federal Court of Claims. 26 U.S.C. § 6226(a).[6] Although the TMP has the exclusive right to file a petition with a federal court within that 90 day period, each partner during the taxable year(s) at issue is considered a party and is allowed to participate in the action. Section 6226(c). Since each partner is considered a party, each partner is bound by the result of the action. *Kaplan* at 471. TEFRA "thereby prevent[s] numerous lawsuits concerning the same factual and legal issues." *Id.*

In addition to having the authority to file a petition on behalf of the partnership, the TMP is authorized to consent to an extension of the statute of limitations for the IRS to file an assessment. The TMP's consent binds all partners. 26 U.S.C. § 6229(b)(1)(B).

In this case, Plaintiffs challenge Winer's authority to act as a TMP for Masters and to bind them to the result of the February 23, 1994 Decision.

## C.

The basis of Plaintiffs' challenge to Winer's authority to act on behalf of Masters is a February 18, 1986 permanent injunction entered into against Winer that required him to resign as TMP of Masters. The history of the injunction at issue is outlined in *Davenport Recycling Associates v. Commissioner*, 76 T.C.M. (CCH) 562 (1998).

The *Davenport* opinion reveals that Winer was the general partner of seven substantially identical limited partnerships, including Masters, that leased Sentinel EPS recyclers. *Id.* at 563–564. In 1984,

Winer came under suspicion for promoting or selling partnerships that included gross valuation overpayments. *Id.* at 565. The Commissioner of Internal Revenue, thus, authorized the U.S. Department of Justice ("DOJ") to seek injunctions against Winer. *Id.* Pursuant to an agreement ultimately reached between the DOJ and Winer, the United State District Court for the Middle District of Florida entered a permanent injunction on February 18, 1986 which ordered Winer to resign as TMP of the partnerships and to send a letter to all partners notifying them of his resignation. *Id.* at 567. The letter was also required to provide the name and address of a new TMP. *Id.*

According to Plaintiffs, the successor TMP for Masters was E.B.A. Investment Co. ("E.B.A."). Plaintiffs further allege that E.B.A. was not consulted before it was appointed TMP and that the government was solely responsible for selecting E.B.A. The *Davenport* Court found that Winer and his attorney, not the government, selected the successor TMPs. *Id.* at 568. At any rate, it is undisputed that E.B.A. refused to act as TMP for Masters. *Id.* and Complaint at ¶ 20. As a result, according to Plaintiffs, the government realized that it lacked a functioning TMP and sought to have Winer reinstated as TMP for the government's own administrative purposes. Thus, on August 11, 1986, the government and Winer filed a Joint Motion for Relief from Final Judgment of Permanent Injunction, which was granted on September 17, 1986. *Id.* at 570–571. According to *Davenport*, the September 17 Order authorized Winer to "act as tax matters partner for the purpose of providing administrative services to the *** partnerships."[7] *Id.* at 571.

Plaintiffs allege that because Winer resigned as TMP on February 18 and be-

---

**6.** After that 90 day period has expired, with some restrictions, other partners may file such a petition. Section 6226(b).

**7.** In contrast to Plaintiffs' claim that the decision to allow Winer to act as TMP for the purpose of providing administrative services

was for the governments own expediency, the *Davenport* Court found that the decision resulted from revelations that (1) Winer's resignation as TMP did not comply with proposed TEFRA regulations and therefore may have been ineffective and (2) the partners designated as successor TMPs were ineligible to serve

cause the September 17 Order limited Winer's TMP authority to providing administrative services, he was not authorized to sign Internal Revenue Service consent forms, Forms 872–P, extending the statute of limitations within which the IRS could issue the FPAA. Nonetheless, Winer signed Forms 872–P on behalf of Masters (Complaint at ¶¶ 24–27). Plaintiffs allege that the IRS knew or had reason to know that Winer lacked the authority to sign the Forms 872–P on behalf of Master (Complaint at ¶ 28).

Additionally, according to Plaintiffs, Winer lacked the authority to represent Masters in any Court proceedings. Nevertheless, the IRS sent the FPAA solely to Winer. The FPAA was dated June 5, 1989, but covered tax years 1982 to 1985. Since Winer was not authorized to sign the Forms 872–P, according to Plaintiffs, the FPAA was barred by the three year statute of limitations (Complaint at ¶ 26). Plaintiffs further challenge Winer's July 21, 1989 Petition to the United States Tax Court, in which he identified himself as Masters' TMP and sought redetermination of the adjustments against Masters in the

in that capacity pursuant to 26 U.S.C. § 6231(a)(7). Section 6231(a)(7) defines the TMP as the *general* partner who either has been designated the TMP or who has the largest profits interest in the partnership. All of the newly designated TMP's were limited partners. *Davenport* at 569–570.

8. Some documents attached to Defendant's Motion challenge the veracity of Plaintiffs' claim that they were not kept informed of the dealings between Winer and the IRS after Winer was reinstated as TMP. Exhibit 1 to Defendant's Motion includes a May 13, 1988 letter from an attorney named Richard Polk to Winer, and copied to Plaintiff Emery Klein. The letter reads, in part:

> My clients have received a notice from the IRS dated May 2, 1988 proposing complete disallowance of all losses and credits for the years 1982 through 1985 relative to their investment in Masters Recycling Associates.... The letter states in part that an examination report is being forwarded to the tax matters partner.... Consequently, since you are the tax matters partner, request is hereby made for a copy of said report.

FPAA. In filing the Petition, Plaintiffs allege, Winer violated the terms of the Permanent Injunction. Plaintiffs further allege that the filing of the Petition was done without notice or participation of the substitute TMP or the partners of Masters, including Plaintiffs (Complaint at ¶ 28).[8]

In addition to claiming that Winer's filing of the Tax Court Petition was unauthorized, Plaintiffs claim that IRS attorneys failed to indicate in their answer that Winer had resigned as Master's TMP, that a substitute TMP had been appointed and that Winer waived all rights to participate in the Tax Court on behalf of Masters (Complaint at ¶ 29). Likewise, according to Plaintiffs, the IRS attorneys failed to indicate any restraints on Winer's ability to act as TMP in the Motion for Entry of Decision (Complaint at ¶ 31). Plaintiffs allege that the IRS knew or had reason to know about the permanent injunction entered against Winer, that a replacement TMP had been named, and that Winer therefore lacked authority to institute, prosecute or settle the Tax Court proceeding on Master's behalf (Complaint at ¶ 33).[9]

A June 10, 1988 letter (also included in Exhibit 1) from Polk to Deborah Hack, one of Winer's attorneys, states in part, "To confirm our conversation of June 9, 1988, you indicated that a Protest was being filed by Sam Winer, the general partner, in connection with the current Internal Revenue Service investigation of the partnership, and that such Protest would be filed within the sixty day period prescribed in the May 2nd notices sent to the partners." This letter was also copied to Plaintiff Emery Klein.

A third letter, attached as Exhibit 2 and dated August 21, 1989, is from Polk to Plaintiff Emery Klein. It reads, "Enclosed please find a copy of the Petition filed by Deborah Hack, of Fred Gordon's office, with the Tax Court in connection with the Masters Recycling matter. I have reviewed the Petition and it appears to cover all of the issues necessary to preserve the rights of the partners for argument before the Tax Court."

9. The *Davenport* Court found that the IRS attorneys appearing in the Tax Court had nothing to do with the permanent injunction, which was handled by a DOJ attorney. The

Due to Winer's alleged lack of authority to act on Masters' behalf, Plaintiffs argue that the Tax Court was without jurisdiction to enter the February 23, 1994 that purported to bind all the partners of Masters (Complaint at ¶ 32). Alternatively, Plaintiffs allege that the IRS's alleged complicity in bringing about the unfavorable Tax Court Decision should estop the IRS from collecting the taxes, interest and penalties it assessed. "[T]he Internal Revenue Service actively aided and required Winer to violate his fiduciary obligations to the Masters Partners for its own benefit and is estopped to collect taxes, interest, and penalties assessed with the consent of Winer as TMP when he was, as a matter of fact, the *de facto* agent of the Government rather than the Partners he was alleged to represent." (Complaint at ¶ 37).

## II. *ANALYSIS*

Defendant's Motion to Dismiss is made pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). With the exception of Plaintiffs' claim for abatement of their assessed negligence penalties, Defendant argues that the Complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Alternatively, Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56, alleging that there are no material facts in dispute.

### A.

Defendant's claim that this Court lacks subject matter jurisdiction to order Defendant to refund Plaintiffs' alleged overpayment of income taxes is based upon 26 U.S.C. § 7422(h). That section provides, "No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)."

Court found that the IRS attorneys "had no knowledge of the terms or outcome of the section 7408 injunction proceeding against Winer before the decision of this case was entered." *Davenport* at 579.

In *Kaplan, supra,* an action analogous to the one before this Court, a former limited partner and his wife filed an action for refund in the United States District Court for the Northern District of Illinois. The plaintiffs alleged that the TMP of the partnership at issue failed to notify them that an audit had been initiated against the partnership or that an FPAA had been served.[10] The plaintiffs first indication of any problem was when the IRS served them with a notice of deficiency and demand for payment. Like Plaintiffs herein, the *Kaplan* plaintiffs paid the amount demanded and then filed their suit for refund in the district court.

In their action, the plaintiffs challenged the propriety of the TMP acting in such a capacity, alleging that he lacked the necessary bona fide interest as a general partner in the partnership. Because the TMP's representation was allegedly improper, the plaintiffs argued (also like Plaintiffs herein) that the TMP's agreements to extend the statute of limitations were invalid. The district court granted the government's motion to dismiss the plaintiffs complaint for lack of subject matter jurisdiction.

Citing § 7422(h), the Seventh Circuit affirmed. *Kaplan* at 474. It further reasoned:

TEFRA requires that all challenges to adjustments of partnership items be made in a single, unified agency proceeding; indeed, this is the key component of TEFRA that yields the desired benefits of economy and consistency. There are two exceptions to this general framework. First, a partner may sue for a refund if the partner's request for an administrative adjustment is denied. See I.R.C. § 6228(b). Second, a partner may seek a refund based upon a computational error. See *id.* § 6230(c). If

10. The *Kaplan* plaintiffs interest in the partnership at issue was less than one percent and, pursuant to § 6223(b)(1), the IRS was not required to serve them with the FPAA. *Kaplan* at 472.

neither of these exceptions apply, however, courts lack subject matter jurisdiction to entertain a partner's lawsuit regarding an adjustment to a partnership item.

*Id.*

By its terms, § 7422(h) precludes actions only as they relate to "partnership items." The definition of a "partnership item" provided by 26 U.S.C. § 31(a)(3) is not specific, rather, it includes, "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." The *Kaplan* Court held that a partner's proportionate share of the partnership's income and deductible losses is within that definition. *Kaplan* at 473. Indeed, the adjustment of deductions claimed by a partnership is "a prototypical partnership item," leaving the court without jurisdiction to entertain the plaintiff's lawsuit. *Id.*

The *Kaplan* Court rejected the plaintiffs attempt to avoid the jurisdictional bar of § 7244(h) by arguing that their case did not concern a partnership item but, instead, challenged the validity to the TMP to serve in that capacity. They argued that the TMP lacked the authority to extend the statute of limitations and, thus, the adjustments of their deductions were barred. In rejecting the plaintiffs' argument, the Court held that the case before it was exactly to type that TEFRA was intended to prohibit.

This argument cannot succeed because the underlying substantive claim concerns the propriety of the adjustments to the partnership's 1983 tax return. If the Kaplans were to succeed in their claim, it would affect the tax liability of all of MCDA II's partners. This is precisely the type of challenge prohibited by TEFRA in light of Congress's decision that such suits are better addressed in one fell swoop at the 'partnership level' than in countless suits by individual partners. Other courts share our view that this kind of statute of limitation challenge concerns a partnership item. *See Thomas v. United States,* 967 F.Supp. 505, 506 (N.D.Ga.1997); *Crowell v. Commissioner of Internal Revenue,* 102 T.C. 683, 693, 1994 WL 151303 (1994); *Slovacek v. United States,* 36 Fed.Cl. 250, 254–56 (1996); *Anderson v. United States,* No. C–91–3523 MHP, 1993 WL 204605 (N.D.Cal. June 3, 1993), aff'd. without opinion, 50 F.3d 13 (9th Cir.1995).

*Kaplan* at 473–474. *Also see Williams v. United States,* 165 F.3d 30, 1998 WL 537579, *2 (6th Cir.1998) (unpublished) ("It is well established that statute of limitations challenges are considered challenges to a partnership item.").

Applying *Kaplan* to the instant case, it is clear that this Court lacks jurisdiction to entertain Plaintiffs' claim for refund with respect to partnership items. Pursuant to *Kaplan,* Plaintiffs' claim for refund of the disallowed deductions is a prototypical partnership item. *Kaplan* at 473. Likewise, Plaintiffs' statute of limitations challenge is a challenge to a partnership item. *Kaplan* at 473–474; *Williams* at *2. Pursuant to § 7422(h), the Court lacks jurisdiction to review these partnership items.

This Court would lack subject matter jurisdiction to review Plaintiffs' claim for refund with respect to partnership items even if Plaintiffs proved that Winer lacked authority to act as TMP for Masters. If Plaintiffs were to succeed on their claim that the Decision of the Tax Court was invalid, it would affect the tax liability of all of the Masters' Partners. "This is precisely the type of challenge prohibited by TEFRA in light of Congress's decision that such suits are better addressed in one fell swoop at the 'partnership level' than in countless suits by individual partners." *Kaplan* at 474.

Also unavailing is Plaintiffs' claim that the "government, by its conduct, assumed

practical control over his TEFRA partnership and thereby prevented the effective representation of the Masters partner under TEFRA." (Plaintiffs' Brief at 30). Pursuant to 26 U.S.C. § 6512(a), a federal court may not entertain a collateral challenge to a Tax Court Decision. Such was the holding of *U.S. v. Mathewson*, 839 F.Supp. 858 (S.D.Fla.1993). In *Mathewson*, the taxpayer attempted to collaterally attack a Tax Court decision, claiming that he had relied upon false representations by an IRS attorney in stipulating to an earlier Tax Court decision. The Court held that § 6512(a) "removed the Federal courts' power to reconsider tax court determinations of liability, regardless of the basis of the challenge." *Mathewson* at 860.

### B.

■ This Court's holding that it cannot reconsider the February 23, 1989 Tax Court Decision does not deprive Plaintiffs of due process. Citing *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), Plaintiffs argue that their constitutional right to be heard confers jurisdiction on this Court to review the validity of the Tax Court Decision. However, though § 7422(h) and § 6512(a) bar this Court from reconsidering the partnership items resolved in the Tax Court Decision, Plaintiffs have not been without a remedy. As recognized by *Thompson v. United States*, No. 95–C–1112–K (N.D.Okla.1996) (unpublished), Plaintiffs could have raised their arguments that the Tax Court Decision was invalid for want of jurisdiction and fraud to the Tax Court. *Thompson* was an action brought by limited partners of Davenport in which the plaintiffs, like the Plaintiffs herein, argued that Winer's actions after resigning as TMP for Davenport were invalid. After holding that the plaintiffs could not collaterally attack the Tax Court Decision, the *Thompson* Court noted, "even if plaintiffs had evidence of bad faith or governmental misconduct, they would be required to bring their challenge in the forum in which the improper conduct took place." *Thompson*, slip op. at 5.

Indeed, in *Davenport*, the very Tax Court judge that presided over the Petition at issue detailed the bases for vacating a Tax Court. Judge Norman H. Wolfe explained:

> Once a decision becomes final, this Court may vacate the final decision only in certain narrowly circumscribed situations. The Court may vacate a final decision if that decision is shown to be void or a legal nullity for lack of jurisdiction over either the subject matter or a party. *Billingsley v. Commissioner*, 868 F.2d 1081 (9th Cir.1989); *Abeles v. Commissioner*, 90 T.C. 103, 105–106, 1988 WL 2747 (1988); *Brannon's of Shawnee, Inc. v. Commissioner*, 69 T.C. 999, 1002, 1978 WL 3327 (1978). The Court may also vacate a final decision if there has been fraud on the Court. *Abatti v. Commissioner*, 859 F.2d 115 (9th Cir.1988), *affg.* 86 T.C. 1319, 1986 WL 22149 (1986); *Senate Realty Corp. v. Commissioner*, 511 F.2d 929, 931 (2d Cir.1975).

*Davenport* at 576.

Thus, if the Tax Court lacked jurisdiction to enter the 1994 Decision regarding Masters or if that Decision was procured by fraud, Plaintiffs could (or at least could have) raised those claims to the Tax Court that entered the Decision. Their argument that due process considerations confer jurisdiction for this Court to entertain their claim for refund is without merit.

### C.

■ Plaintiffs' ability to challenge Winer's authority to act as TMP before the Tax Court Decision was entered further undermines their due process challenge. The correspondence produced by Defendant and described in footnote 8 demonstrates that Plaintiff Emery Klein knew that Winer was acting as TMP in 1988, well after Winer mailed out the notices indicating that he had resigned as TMP. Further, shortly after Winer filed the 1989 Petition in the Tax Court, naming himself as the TMP, Plaintiff Emery Klein received a copy of the Petition. As a part-

ner, Plaintiff Emery Klein was a party to the tax court action and had the right to participate in the proceedings. Section 6226(c). Yet, he chose not to participate in the Tax Court proceedings and did not raise any objection to Winer acting as TMP to the Tax Court. That Plaintiff Emery Klein elected not to participate in the Tax Court proceedings is demonstrated by paragraph 3 of the Motion for Entry of Decision:

> No partner, other than the Tax Matters Partner, is a participating partner to this action within the meaning of Rule 247(b) of the Tax Court's Rules of Practice and Procedure in that no other notice partner has filed an election to participate. The time within which to file a notice of election to intervene or to participate under Rule 245(a) or 245(b) has expired.

(Exhibit 5).

Citing *Mishawaka Properties v. Commissioner*, 100 T.C. 353, 1993 WL 112454 (1993) and *Kraasch v. Commissioner*, 70 T.C. 623, 1978 WL 3306 (1978), the *Davenport* Court persuasively held that the partners of Davenport had impliedly ratified the Petition that Winer filed on Davenport's behalf. The Court reasoned that the partners did not question Winer's authority as TMP until after they were assessed by respondent.

Therefore, by waiting until 1996 to repudiate the petition that Karras knew Win-

er had filed in 1989, Karras impliedly ratified it. Karras 'had the duty and [was] in a position to disaffirm any unauthorized acts *** long before filing *** [the] motion now before the Court.' *Kraasch v. Commissioner, supra* at 628. *Davenport* at 579.

The reasoning of *Davenport* applies equally to this case. By waiting until 1996 (when Plaintiffs filed their claim for refund) to challenge Winer's authority to act as TMP of Masters and repudiate the 1989 Tax Court Petition, Plaintiff Emery Klein impliedly ratified it. Since Plaintiffs had the right to be heard before the Tax Court but did not exercise that right, it is even more clear that their due process claim is without merit.[11]

**D.**

The assessments Plaintiffs received from Defendant in 1995 included a valuation overstatement penalty, a substantial underpayment increased interest rate and a negligence penalty. In its Motion to Dismiss, Defendant concedes that Plaintiffs' claim for refund pertaining to the negligence penalty is not subject to dismissal. Defendant, however, argues that the doctrines of *res judicata* and *stare decisis* preclude Plaintiffs claim for refund of the valuation overstatement penalty and increased interest rate.[12]

26 U.S.C. § 6659 [13] authorized the IRS to impose an addition to tax when an indi-

---

**11.** Plaintiffs' reliance upon *Transpac Drilling Venture v. C.I.R.*, 147 F.3d 221 (2nd Cir.1998), is misplaced. The *Transpac* Court did hold that a TMP may be barred from acting on behalf of a partnership when his acting in that capacity would create a conflict of interest. *Transpac* at 227. Further, the Court held that TMPs at issue, who were cooperating participants in a criminal investigation, were acting under a conflict of interest when they signed consents extending the statute of limitations. *Id.* Unlike in this case, however, the limited partners at issue challenged the authority of the TMPs to sign the consents *during* the Tax Court proceeding. Instead of bolstering Plaintiffs' case, *Transpac* is actually an illustration of the proper manner in which Plaintiffs should have challenged Winer's authority to act on Masters' behalf.

**12.** The valuation overstatement, interest and negligence penalties are not "partnership items." Rather, they are all "affected items" under § 6231(a)(5). *See N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 745–746, 1987 WL 45298 (1987); *Affiliated Leasing II v. Commissioner*, 97 T.C. 575, 1991 WL 241149 (1991); *Crowell v. C.I.R.*, 102 T.C. 683, 686, 1994 WL 151303 (1994). Affected items are those that may require some determination at the individual partner level after the completion of the partnership level proceedings. *N.C.F.* at 743–746. Since these additions to tax are not "partnership items," they are not subject to the § 7422(h) jurisdictional bar.

**13.** Section 6659 was repealed in 1989.

vidual underpaid his or her taxes by more than $1000 as a result of a valuation overstatement. In *Illes v. C.I.R.*, 982 F.2d 163 (6th Cir.1992), the Court explained a valuation overstatement as follows: " 'When an underpayment stems from disallowed depreciation deductions or investment credit due to lack of economic substance, the deficiency is attributable to overstatement of value, and subject to the penalty under section 6659." *Illes* at 167, *quoting Massengill v. Commissioner*, 876 F.2d 616, 619–20 (8th Cir.1989).

If a taxpayer has underpaid taxes as a result of a § 6659 valuation overstatement, the taxpayer is considered to have engaged in a "tax motivated transaction," and the IRS is permitted to also impose interest at an increased rate. 26 U.S.C. § 6621(c)(3)(A)(i);[14] *Illes* at 167. Additionally, the increased interest rate imposed under § 6621(c) is applicable to sham and fraudulent transactions. Section 6621(c)(3)(A)(v).

In this case, it cannot reasonably be challenged that the adjustment of partnership items reflected in the Tax Court Decision were based on a concession by Winer that Masters was a tax motivated, sham transaction and that the deductions taken by the partners involved overstatements of value. Records attached to Defendant's Brief indicate that the IRS believed that Masters did not intend to profit from its activities, had no economic reality and was a sham (Exhibit 1 at 2). For that reason, the IRS took the position that Masters was not entitled to the investment tax or business energy credits (Exhibit 1 at 4). The IRS further concluded that Masters overstated the value of its EPS recyclers to such an extent that its asserted asset basis—$7,000,000—was inflated by 3500%. As a result, Masters' partners were subject to the § 6659 penalty (Exhibit 1 at 4). Finally, the IRS asserted that the § 6621(c) interest penalty for substantial underpayments attributable to tax motivated transactions was applicable (Exhibit 1 at 5).

Winer contested all of these findings in his June 30, 1988 formal written appeal to the IRS (Exhibit 1). He also refuted the IRS's findings in his July 21, 1989 Petition for Readjustment (Exhibit 2), where he asserted that the IRS erred in finding that Masters was not in a trade, business or activity entered into for profit and erred in finding that Masters was not entitled to the investment tax or business energy credits. Additionally, Winer alleged in the petition that Masters' four EPS recyclers were purchased for a total of $4,650,668.

The Tax Court Decision reveals that the IRS's findings were upheld in all respects. All of the partnership deductions and credits were eliminated (Exhibit 6). Thus, the Decision confirmed the IRS's allegations that Masters was involved in a sham, tax-motivated transaction and that the deductions and credits taken by the partners were improper because the transaction lacked economic substance.

As a partner of Masters, Plaintiff Emery Klein was a party to the Masters' Tax Court action and is bound by the outcome. Section 6226(c), *Kaplan* at 471. *Res judicata* precludes Plaintiffs from relitigating the issues of whether Masters was a sham, was tax-motivated and lacked economic substance. "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

Since Plaintiffs' underpayment of taxes stemmed from disallowed depreciation deductions and investment credits due to lack of economic substance, the deficiency is attributable to overstatement of value and is subject to the penalty under § 6659. *Illes* at 167. Because Plaintiffs have underpaid taxes as a result of a § 6659 valuation overstatement and because Masters was found to be a sham, the § 6621(c) interest penalty was properly imposed. 26 U.S.C. § 6621(c)(3)(A)(i) and (v); *Illes* at

---

14. This version of § 6621(c) was repealed in 1989.

167; *Thomas v. United States*, 166 F.3d 825, 833–834 (6th Cir.1999).

### E.

■ In paragraph 36 of their Complaint, Plaintiffs claimed that the IRS's failure to follow regulations concerning the selection of and dealings with the substitute TMP resulted in excessive interest being imposed against Plaintiffs. They argue that the amount of excessive interest should be abated and refunded to Plaintiffs pursuant to 26 U.S.C. § 6404(e). Section 6404(e)(1)(A) authorizes the IRS to abate interest that is attributable to delay by the IRS in performing a ministerial act. However, "[J]udicial review of IRS's exercise or nonexercise of discretion under section 6404(e)(1) is not available." *Horton Homes, Inc. v. U.S.*, 936 F.2d 548, 554 (11th Cir.1991). Additionally, no inquiry into the taxpayer's investment motive is warranted when determining whether a § 6621(c) interest penalty is imposed. *Thomas* at 833–834. Thus, the Court must dismiss Plaintiffs' claim for refund of the § 6621(c) interest penalty.

The Court will also dismiss Plaintiffs' claim for refund of the § 6659 penalty. In paragraph 51, Plaintiffs argue that the IRS should have abated the § 6659 penalty pursuant to § 6659(e), which provides:

> The Secretary may waive all or any part of the addition to the tax provided by this section on a showing by the taxpayer that there was a reasonable basis for the valuation or adjusted basis claimed on the return and that such claim was made in good faith.

The IRS's refusal to abate the § 6659 penalty is reviewable only for abuse of discretion. *Krause v. C.I.R.*, 99 T.C. 132, 178, 1992 WL 178601 (1992). In order for the Court to find that the IRS abused its discretion, it is Plaintiffs burden to "show that the reasonable cause and good faith is

so clear that the Commissioner's refusal is arbitrary, capricious and without sound basis in fact." *Buehler Lumber Co., Inc. v. U.S.*, 1994 WL 663276, *2 (W.D.Pa.1994) (internal quotation marks and citation omitted).

In *Buehler Lumber*, the Court held that the plaintiff had failed to satisfy its burden of demonstrating that the IRS's refusal to abate was an abuse of discretion. It reasoned, "Plaintiff has not alleged any facts which could be said to support the allegation that there was a reasonable basis for the valuation." *Buehler Lumber* at *2. The same can be said for Plaintiffs herein.

■ Plaintiffs allege at length in their Complaint that they relied upon the advise of an investment counselor, an accountant and tax counselor before investing in Masters (Complaint at ¶¶ 7–11). However, Plaintiffs allege no facts either in their Complaint or in their Opposition to Defendant's Motion to Dismiss that could support their allegation that there was a reasonable basis for the valuation of the recyclers at issue. All indications available to the Court are that the EPS recyclers were grossly inflated. Although Masters initially valued the EFS recyclers at about $1,162,666 each, they were each found to be worth only about $50,000.[15] Such a gross overvaluation weighs against a finding that there was a reasonable basis for the valuation. *See Spears v. Commissioner*, 131 F.3d 131, 1997 WL 734017, *2 (2nd Cir.1997) (unpublished) (A valuation over 23 times actual value was held not reasonable.).

Moreover, the Court is mindful that Defendant's Motion is filed in part pursuant to Rule 56. Under Rule 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

**15.** In *Davenport* at 563, Judge Wolfe found that the lease transactions involving the Sentinel EPS recyclers were in substance the same as those in lead Plastic Recycling case, *Provizer v. Commissioner*, 63 T.C.M. (CCH) 2531 (1992), *aff'd* 996 F.2d 1216 (6th Cir.1993) (unpublished). In *Provizer*, Judge Wolfe found that the Sentinel E.P.E. recyclers at issue had been valued by the petitioner at $1,162,666 but had fair market values of approximately $50,000 each. *Provizer* at 2554.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. Ag Trucking, Inc.,* 57 F.3d 484, 488 (6th Cir.1995). Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule. 56(e); *Cox v. Kentucky Dept. of Transp.,* 53 F.3d 146, 150 (6th Cir.1995). The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland,* 57 F.3d at 479. In opposition to Defendant's Motion, Plaintiffs have presented no evidence to support their claim that there was a reasonable basis for Masters' valuation of the EPS recyclers. Accordingly, the Court dismisses Plaintiffs' claims for refund of the § 6659 penalty.

### F.

■ Finally, the Court will dismiss Plaintiffs' claim that they should not be assessed the 26 U.S.C. § 6653(a) negligence penalty or § 6621(c) interest penalty because the IRS conceded those penalties with respect to a substantially similar taxpayer in *Elliot I. Miller v. Commissioner,* Docket No. 10382–86 and *Elliot I. Miller v. Commissioner,* Docket No. 10383–86. In their Complaint, Plaintiffs allege that they must be treated consistently with Miller pursuant to 26 U.S.C. § 6224(c)(2), which provides:

If the Secretary enters into a settlement agreement with any partner *with respect to partnership items* for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement.

(Emphasis added).

As noted in footnote 12, the negligence and interest penalties are "affected items,"

not "partnership items." Section 6224(c)(2) requires consistency only of partnership items. Thus, Plaintiffs' argument that § 6224(c)(2) requires Defendant to concede their negligence and interest penalties for must fail.

In their Opposition to Defendant's Motion to Dismiss, Plaintiffs offer a common-law "equality" argument. Quoting Justice Frankfurter's concurring opinion in *U.S. v. Kaiser,* 363 U.S. 299, 308, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960), Plaintiffs argue:

The Commissioner cannot tax one and not tax another without some rational basis for the difference. And so, assuming the correctness of the principle of 'equality,' it can be an independent ground of decision that the Commissioner has been inconsistent, without much concern for whether we should hold as an original matter that the position the Commissioner now seeks to sustain is wrong.

In this case, there is a rational basis for the difference in treated accorded Miller and Plaintiffs; Miller agreed to a settlement prior to the partnership level trial while Plaintiffs did not. The manner in which Miller and other Plastics Recycling partners received favorable terms from the IRS was outlined in *Estate of Satin v. Commissioner,* 68 T.C.M. (CCH) 607 (1994). There, Judge Wolfe explained that the *Miller* cases were selected by the parties as two of the three lead cases for the resolution of the Plastics Recycling cases. *Id.* at 608. A number of taxpayers also signed "piggyback" agreements, thereby agreeing to be bound by the results of the lead cases. *Id.* at 608–609. In December 1988, Miller negotiated a settlement prior to trial in which the IRS conceded the negligence and interest penalties. *Id.* The taxpayers who had signed the piggyback agreements were afforded the same terms as Miller received. *Id.* at 613–614. Plaintiffs did not sign the piggyback agreement and were, therefore, not offered the same terms as Miller and the taxpayers who had signed the agreement.

The piggyback agreement was not Plaintiffs' first opportunity to settle on more favorable terms. All of the parties to the Plastics Recycling cases had previously been offered a settlement in which the IRS would have conceded the negligence and interest penalties. *Singer v. Commissioner*, 74 T.C.M. (CCH) 120, 137 (1997). In *Singer*, Judge Wolfe rejected the identical "equality" argument Plaintiffs advance in this case, finding that the settlement agreement entered into by Miller was a rational basis for treating him differently from those who did not settle.

> Petitioners failed to accept a piggyback settlement offer that would have entitled them to the settlement reached in the Miller cases and also rejected a settlement offer made to them prior to trial of a test case. In contrast, Miller negotiated for himself and accepted an offer that was essentially the same as the Plastics Recycling project settlement offer rejected by petitioners prior to trial. Accordingly, petitioners' motion is not supported by the principle of equality on which they rely.

*Id.* at 137–138.

An additional distinction noted by Judge Wolfe was that Miller made payment to the IRS prior to December 31, 1984. As a result, no interest accrued against Miller after that date, thereby foreclosing any potential liability for increased interest. *Id.* at 138. In contrast, the *Singer* petitioners did not make any payments prior to December 31, 1984.

The Court adopts the reasoning of *Singer* and dismisses Plaintiffs' claims set forth in paragraphs 37–40 and 48 that the IRS was required to treat them consistently with Miller and the 21 other taxpayers who signed piggyback agreements.

### ORDER

For the reasons stated above,

**THE COURT HEREBY DISMISSES** paragraphs 13–40, 46–48 and 50–51 of Plaintiffs' Complaint.

**THE COURT FURTHER DISMISSES** the portion of paragraph 54 alleging that Plaintiffs overpaid income tax in the amount of $32,678 and interest in the amount of $80,868.25.

**THE COURT FURTHER DISMISSES** Plaintiffs' allegation in paragraph 54 that they overpaid penalties to the extent that those penalties were assessed pursuant to 26 U.S.C. § 6659. The penalties alleged under paragraph 54 are preserved to the extent that they were assessed pursuant to 26 U.S.C. § 6653(a).